UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 13 |
| Paul Griffin David, Sr., and | ) | |
| Damita Jo David, | ) | |
| | ) | Case number 23-50230-sms |
| Debtors | ) | |
| | ) | |
| Progress Residential Borrower 9, | ) | |
| LLC | ) | |
| Movant/Creditor | ) | |
| v. | ) | Notice of Hearing |
| | ) | |
| Paul Griffin David, Sr., and | ) | |
| Damita Jo David, Debtors; | ) | |
| K. Edward Safir, Trustee | ) | |

Respondents

**Notice Of Hearing**

PLEASE TAKE NOTICE that Movant has filed a Motion for Relief from

Stay and related papers with the Court seeking an order granting relief from the

automatic bankruptcy stay.

**PLEASE TAKE FURTHER NOTICE** that the Court will hold an initial

telephonic hearing for announcements on the Motion for Relief at the following

number Toll-free number: 833-568-8864; Meeting ID 161 179 4270 at 10:15 a.m.

on May 16, 2023, in Courtroom 1201, United States Courthouse, 75 Ted Turner

Drive, SW, Atlanta, Georgia 30303.

Matters that need to be heard further by the Court may be heard by telephone, by video conference, or in person, either on the date set forth above or on some other day, all as determined by the Court in connection with this initial telephonic hearing. Please review the "Hearing Information" tab on the judge's webpage, which can be found under the "Dial-in and Virtual Bankruptcy Hearing Information" link at the top of the webpage for this Court, www.ganb.uscourts.gov for more information.

Your rights may be affected by the court's ruling on these pleadings. You should read these pleadings carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.)

If you do not want the court to grant the relief sought in these pleadings or if you want the court to consider your views, then you and/or your attorney must attend the hearing. You may also file a written response to the pleading with the Clerk at the address stated below, but you are not required to do so. If you file a written response, you must attach a certificate stating when, how and on whom (including addresses) you served the response.

Mail or deliver your response so that it is received by the Clerk at least two (2) business days before the hearing. The address of the Clerk's Office is: Clerk, U. S. Bankruptcy Court, Suite 1340, 75 Ted Turner Drive SW (formerly Spring Street SW), Atlanta, Georgia 30303.

*You must also mail a copy of your response to the undersigned at the address stated below.* If you or your attorney do not take these steps, the Court may decide that you do not oppose the relief sought in the Motion and may enter an Order granting relief.

If a hearing on the motion for relief from the automatic stay cannot be held within thirty (30) days, Movant waives the requirement for holding a preliminary hearing within thirty days of filing the motion and agrees to a hearing on the earliest possible date. Movant consents to the automatic stay remaining in effect until the Court orders otherwise.

This notice is sent by the undersigned pursuant to 11 U.S.C. § 362 noticing requirements.

Dated: April 27, 2023

Cruikshank Ersin, LLC
6065 Roswell Road, Suite 680
Atlanta, Georgia 30328
Fax: 770-884-8114
Telephone: 770-884-8184
E-mail address: beth@cruikshankersin.com

By: */s/ Elizabeth M. Cruikshank*

Elizabeth M. Cruikshank, Esq.
Attorney for Movant
Georgia Bar Number 215235

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 13 |
| Paul Griffin David, Sr., and | ) | |
| Damita Jo David, | ) | |
| | ) | Case number 23-50230-sms |
| Debtors | ) | |
| | ) | |
| Progress Residential Borrower 9, | ) | |
| LLC | ) | |
| Movant/Creditor | ) | |
| v. | ) | Motion for Relief from |
| | ) | Automatic Stay |
| Paul Griffin David, Sr., and | ) | |
| Damita Jo David, Debtors; | ) | |
| K. Edward Safir, Trustee | ) | |

Respondents

**Motion for Relief from Automatic Stay**

Movant Progress Residential Borrower 9, LLC ("Movant") comes before this

Honorable Court and brings this Motion for Relief from Stay by and through

undersigned counsel pursuant to 11 U.S.C. § 362, 11 U.S.C. § 363, and Federal Rule

of Bankruptcy Procedure 4001 (a) (1) by showing this Honorable Court the

following:

Basis for the Motion

1. Movant seeks relief from existing stay for the purpose of dispossessing Debtor(s) of a residential rental property located at: 5161 Madison Green Dr SW Mableton, GA 30126 ("Property").

2. Property is in Cobb County, Georgia and a dispossessory would be subject to the jurisdiction of the Courts of that county.

3. Movant owns and/or manages the Property. Debtor(s) is/are a tenant pursuant to a residential lease agreement for a term of twelve (12) months beginning on Thursday, June 17, 2021, and ending on Monday, June 20, 2022. The agreement provides Debtor(s) with a possessory interest and stipulates that Debtor's monthly rent is $2,160.00 (two thousand one hundred sixty and 00/100 dollars). Debtor(s) also pays monthly fees amounting to: a late fee of $125.00 charged each month during which Debtor's rent payment is received after the 3rd day of the month. Additionally, said residential lease agreement stipulates that upon the expiration of the twelve-month term, the agreement automatically converted to a month-to-month lease with monthly rent being at the market rate. Beginning 07/01/2022, the monthly [market rate] rent until the date of this filing is $3,060.00 (three thousand sixty and 00/100 dollars).

4. Debtor(s) continues to reside in the Property and has failed to provide adequate assurance of future performance under the terms of the Lease Agreement.

5.   Debtor(s) filed a petition under Chapter 13 Of the Bankruptcy Code on Monday, January 09, 2023.

6.   O.C.G.A. § 44-7-54 (a) (1) provides that  where the issue of the right of possession cannot be finally determined within two weeks from the date of service of the copy of the summons and the copy of the affidavit, the tenant shall be required to pay into the registry of the trial court:  "All rent and utility payments which are the responsibility of the tenant payable to the landlord under terms of the lease which become due after the issuance of the dispossessory warrant, said rent and utility payments to be paid as such become due."

7.   Because Tenant(s)-Debtor(s) filed the instant bankruptcy case, Landlord's ability to collect rent pursuant to O.C.G.A. § 44-7-54 and all other sections of applicable Georgia law has been stayed.

8.   Debtor(s) has failed to pay rent, late fees, and all other fees associated with the lease agreement, either to Movant or into the Registry of the Court, for November, 2022, through May 2023.  Towards that end, the date Debtor(s) account with Movant was at a $0.00 balance was May 31, 2022.

9.   Debtor(s) is/are in default of the lease and the provisions of 11 U.S.C. § 365 do apply.

Movant's Requests

10. Pursuant to 11 U.S.C. § 362, Movant may be stayed from the commencement or continuation of any court or other proceeding against Debtor(s) to recover possession of the rental Property.

11. Movant has, since the filing of the Bankruptcy petition, incurred additional costs for attorneys, rent, and all other expenses associated with Debtor's occupancy of the property.  Continuation of the automatic bankruptcy stay will harm Movant.

12. Movant is entitled to recover post-filing rent on the first of each month, plus late fees (if rent payments are late) and all other outstanding post-filing fees specified in the lease agreement.

13. Debtor(s) owes prepetition debt and fees in the amount of $19,309.45. Debtor(s) owes post-petition rent and fees beginning February 1, 2023, in the amount of $14,062.23.

14. Movant seeks possession of the property and unpaid post-filing rent and fees from the Debtor(s).

15. Movant cannot be adequately protected in the Bankruptcy matter, thus Movant should be granted relief from the Stay under Section 362(d) of the United States Bankruptcy Code.

Prayer For Relief

WHEREFORE, Movant respectfully requests that the Court issue an order granting the following:

a) That Movant be granted an Order lifting the automatic stay and further allows Movant to proceed under applicable non-bankruptcy law to enforce its remedies, specifically to allow the Courts of Cobb County, State of Georgia to move forward with a dispossessory action against Debtor(s) including a money judgment against Debtor for unpaid post-filing rent and fees;

b) For reasonable attorney's fees associated with the cost of bringing this Request for Relief from Stay;

c) To the extent provided by 11 U.S.C. § 109 (g), should Debtor(s) move to voluntarily dismiss the current bankruptcy case, that Debtor(s) be enjoined from refiling within 180 days, and/or refiling in such manner as to prevent Movant from proceeding with the dispossessory action for possession;

d) That the 14-day stay prescribed by Bankruptcy Rule 4001(a)(3) be waived;

e) Alternatively, if relief from stay is not granted, Movant respectfully requests the Court to order just and proper protection for its interests in the subject property including, but not limited to, payment of post-filing rent into the registry of the Court and/or ordering Debtor(s) to strictly comply with the terms of the rental lease Agreement.

Respectfully submitted on Thursday, April 27, 2023.

Cruikshank Ersin, LLC
6065 Roswell Road, Suite 680
Atlanta, Georgia 30328
Fax: 770-884-8114
Telephone: 770-884-8184
E-mail address: beth@cruikshankersin.com

By: */s/ Elizabeth M. Cruikshank*

Elizabeth M. Cruikshank, Esq.
Attorney for Movant
Georgia Bar Number 215235

## <u>Certificate of Service</u>

This is to certify that I, the undersigned attorney Elizabeth M. Cruikshank, have served Debtor(s) and all parties named on the Distribution List with the foregoing Motion for Relief from Automatic Stay (including the attached and completed Notice of Hearing as well as all attached exhibits) by properly filing same with the Bankruptcy Court for the Northern District of Georgia using the CM/ECF system (which will deliver electronic notice to certain parties) and by depositing a true and accurate copy of same in the U. S. Mail, with proper postage affixed and addressed as follows:

*Debtor :*
Paul Griffin David, Sr.
5161 Madison Green Drive SW
Mableton, GA 30126
COBB-GA

*Joint Debtor:*
Damita Jo David
5161 Madison Green Drive SW
Mableton, GA 30126
COBB-GA

Trustee:
K. Edward Safir
Standing Chapter 13 Trustee
Suite 1600
285 Peachtree Center Ave. NE
Atlanta, GA 30303
404-525-1110

*Debtor's Attorney(s):*
E. L. Clark
Clark & Washington, LLC
Bldg. 3
3300 Northeast Expwy.
Atlanta, GA 30341
404-522-2222
Fax : 770-220-0685
Email: ecfnotices@cw13.com

U.S. Trustee:
Office of the United States Trustee
362 Richard Russell Building
75 Ted Turner Drive, SW
Atlanta, Georgia 30303

Movant's Attorney:
Elizabeth M. Cruikshank, Esq.
Cruikshank Ersin, LLC
6065 Roswell Road, Suite 680
Atlanta, Georgia 30328

On Thursday, April 27, 2023.

Cruikshank Ersin, LLC
6065 Roswell Road, Suite 680
Atlanta, Georgia 30328
Fax: 770-884-8114
Telephone: 770-884-8184
E-mail address: beth@cruikshankersin.com

By: */s/ Elizabeth M. Cruikshank*

Elizabeth M. Cruikshank, Esq.
Attorney for Movant
Georgia Bar Number 215235

# Resident Ledger



**Date: 04/24/2023**

| Code | t0039475 | Property | 57197 | Lease From | 06/17/2021 |
|------|----------|----------|-------|------------|------------|
| Name | Paul David | Unit | 57197 | Lease To | 06/20/2022 |
| Address | 5161 Madison Green Dr SW | Status | Eviction | Move In | 06/14/2019 |
| | Bankruptcy 1/2023 | Rent | 3060.00 | Move Out | 10/31/2023 |
| City | Mableton, GA 30126 | Phone (H) | (770) 739-7880 | Phone (W) | |

| Date | Chg Code | Description | Charge | Payment | Balance | Chg/Rec |
|------|----------|-------------|--------|---------|---------|---------|
| 05/28/2019 | appfee | Application Fee (Paul David Sr) | 50.00 | | 50.00 | 6677040 |
| 05/28/2019 | holdfee | Holding Fee (Paul David Sr) | 500.00 | | 550.00 | 6677041 |
| 05/28/2019 | appfee | Application Fee (Damita David) | 50.00 | | 600.00 | 6677042 |
| 05/28/2019 | appfee | Application Fee (Kimberly David) | 50.00 | | 650.00 | 6677043 |
| 05/28/2019 | appfee | Application Fee (Paul David Jr) | 50.00 | | 700.00 | 6677044 |
| 05/28/2019 | appfee | Application Fee (Tabitha David) | 50.00 | | 750.00 | 6677045 |
| 05/28/2019 | | chk# :ACH-WEB Online Payment - EFT Payment. Web - Online Leasing | | 750.00 | 0.00 | 3185457 |
| 05/30/2019 | secdep | Deposit | 1,970.00 | | 1,970.00 | 6686410 |
| 06/12/2019 | | chk# :ACH-WEB Online Payment - EFT Payment. Web - Resident Services | | 1,970.00 | 0.00 | 3240619 |
| 06/12/2019 | | chk# :ACH-WEB Online Payment - EFT Payment. Web - Resident Services | | 741.33 | (741.33) | 3240635 |
| 06/14/2019 | rent | Rent for 17 days | 1,116.33 | | 375.00 | 6728441 |
| 06/14/2019 | holdfee | Holding Fee Credit | (500.00) | | (125.00) | 6728442 |
| 06/14/2019 | lseadmin | Lease Admin Fee | 125.00 | | 0.00 | 6728443 |
| 07/01/2019 | rent | Rent (07/2019) | 1,970.00 | | 1,970.00 | 6848095 |
| 07/01/2019 | | chk# :ACH-WEB Online Payment - EFT Payment Paid by Roommate Damita David(r0159709).Web - Resident Services | | 1,970.00 | 0.00 | 3300700 |
| 07/31/2019 | | chk# :ACH-WEB Online Payment - EFT Payment Paid by Roommate Damita David(r0159709).Web - Resident Services | | 2,024.90 | (2,024.90) | 3371992 |
| 08/01/2019 | utility | Acct. Setup - | 25.00 | | (1,999.90) | 6971011 |
| 08/01/2019 | utility | Electricity - 06/14/19-06/14/19 | 2.71 | | (1,997.19) | 6971012 |
| 08/01/2019 | utility | Service Fee - | 7.95 | | (1,989.24) | 6971013 |
| 08/01/2019 | utility | Trash - 06/14/19-07/01/19 | 19.24 | | (1,970.00) | 6971014 |
| 08/01/2019 | rent | Rent (08/2019) | 1,970.00 | | 0.00 | 7085054 |
| 08/30/2019 | | chk# :ACH-WEB Online Payment - EFT Payment Paid by Roommate Damita David(r0159709).Web - Resident Services | | 2,120.19 | (2,120.19) | 3455276 |
| 09/01/2019 | utility | Gas - 06/14/19-07/10/19 | 24.22 | | (2,095.97) | 7235549 |
| 09/01/2019 | utility | Service Fee - | 7.95 | | (2,088.02) | 7235550 |
| 09/01/2019 | utility | Sewer - 06/14/19-07/16/19 | 45.56 | | (2,042.46) | 7235551 |
| 09/01/2019 | utility | Trash - 07/01/19-07/31/19 | 30.38 | | (2,012.08) | 7235552 |
| 09/01/2019 | utility | Water - 06/14/19-07/16/19 | 42.08 | | (1,970.00) | 7235553 |
| 09/01/2019 | rent | Rent (09/2019) | 1,970.00 | | 0.00 | 7337594 |
| 10/01/2019 | utility | Gas - 07/10/19-08/12/19 | 36.24 | | 36.24 | 7481774 |
| 10/01/2019 | utility | Service Fee | 7.95 | | 44.19 | 7481775 |
| 10/01/2019 | utility | Sewer - 07/16/19-08/15/19 | 48.32 | | 92.51 | 7481776 |
| 10/01/2019 | utility | Trash - 09/01/19-10/01/19 | 31.74 | | 124.25 | 7481777 |
| 10/01/2019 | utility | Trash - 07/31/19-08/31/19 | 30.39 | | 154.64 | 7481778 |
| 10/01/2019 | utility | Water - 07/16/19-08/15/19 | 44.63 | | 199.27 | 7481779 |
| 10/01/2019 | rent | Rent (10/2019) | 1,970.00 | | 2,169.27 | 7643878 |
| 10/01/2019 | | chk# :ACH-WEB Online Payment - EFT Payment Paid by Roommate Damita David(r0159709).Web - Resident Services | | 2,169.27 | 0.00 | 3562488 |
| 11/01/2019 | utility | Gas - 08/12/19-09/10/19 | 32.84 | | 32.84 | 7730059 |
| 11/01/2019 | utility | Service Fee | 7.95 | | 40.79 | 7730060 |
| 11/01/2019 | utility | Sewer - 08/15/19-09/16/19 | 54.36 | | 95.15 | 7730061 |
| 11/01/2019 | utility | Trash - 10/01/19-10/31/19 | 30.72 | | 125.87 | 7730062 |
| 11/01/2019 | utility | Water - 08/15/19-09/16/19 | 49.50 | | 175.37 | 7730063 |
| 11/01/2019 | rent | Rent (11/2019) | 1,970.00 | | 2,145.37 | 7899335 |

| Date | Type | Description | Charge | Payment | Balance | Ref |
|---|---|---|---|---|---|---|
| 11/01/2019 | | chk# :ACH-WEB Online Payment - EFT Payment Paid by Roommate Damita David(r0159709).Web - Resident Services | | 2,145.27 | 0.00 | 3649220 |
| 11/30/2019 | | chk# :ACH-WEB Online Payment - EFT Payment Paid by Roommate Damita David(r0159709).Web - Resident Services | | 2,146.64 | (2,146.64) | 3750814 |
| 12/01/2019 | utility | Gas - 09/10/19-10/10/19 | 34.11 | | (2,112.53) | 7991698 |
| 12/01/2019 | utility | Service Fee | 7.95 | | (2,104.58) | 7991699 |
| 12/01/2019 | utility | Sewer - 09/16/19-10/15/19 | 54.36 | | (2,050.22) | 7991700 |
| 12/01/2019 | utility | Trash - 10/31/19-11/30/19 | 30.72 | | (2,019.50) | 7991701 |
| 12/01/2019 | utility | Water - 09/16/19-10/15/19 | 49.50 | | (1,970.00) | 7991702 |
| 12/01/2019 | rent | Rent (12/2019) | 1,970.00 | | 0.00 | 8165060 |
| 12/31/2019 | | chk# :ACH-WEB Online Payment - EFT Payment Paid by Roommate Damita David(r0159709).Web - Resident Services | | 2,230.12 | (2,230.12) | 3855901 |
| 01/01/2020 | utility | Gas - 10/10/19-11/11/19 | 116.57 | | (2,113.55) | 8386731 |
| 01/01/2020 | utility | Service Fee | 7.95 | | (2,105.60) | 8386732 |
| 01/01/2020 | utility | Sewer - 10/15/19-11/13/19 | 54.36 | | (2,051.24) | 8386733 |
| 01/01/2020 | utility | Trash - 12/01/19-12/31/19 | 31.74 | | (2,019.50) | 8386734 |
| 01/01/2020 | utility | Water - 10/15/19-11/13/19 | 49.50 | | (1,970.00) | 8386735 |
| 01/01/2020 | rent | Rent (01/2020) | 1,970.00 | | 0.00 | 8514325 |
| 02/01/2020 | utility | Gas - 11/11/19-12/10/19 | 196.18 | | 196.18 | 8612755 |
| 02/01/2020 | utility | Service Fee | 7.95 | | 204.13 | 8612756 |
| 02/01/2020 | utility | Sewer - 11/13/19-12/16/19 | 66.44 | | 270.57 | 8612757 |
| 02/01/2020 | utility | Trash - 12/01/19-12/31/19 | 2.05 | | 272.62 | 8612758 |
| 02/01/2020 | utility | Trash - 12/31/19-01/30/20 | 32.70 | | 305.32 | 8612759 |
| 02/01/2020 | utility | Water - 11/13/19-12/16/19 | 59.24 | | 364.56 | 8612760 |
| 02/01/2020 | rent | Rent (02/2020) | 1,970.00 | | 2,334.56 | 8793936 |
| 02/01/2020 | | chk# :ACH-WEB Online Payment - EFT Payment Paid by Roommate Damita David(r0159709).Web - Resident Services | | 2,334.56 | 0.00 | 3963743 |
| 02/29/2020 | | chk# :ACH-WEB Online Payment - EFT Payment Paid by Roommate Damita David(r0159709).Web - Resident Services | | 2,391.50 | (2,391.50) | 4062185 |
| 03/01/2020 | utility | Gas - 12/10/19-01/10/20 | 266.09 | | (2,125.41) | 8899520 |
| 03/01/2020 | utility | Service Fee | 7.95 | | (2,117.46) | 8899521 |
| 03/01/2020 | utility | Sewer - 12/16/19-01/17/20 | 60.40 | | (2,057.06) | 8899522 |
| 03/01/2020 | utility | Trash - 01/30/20-02/29/20 | 32.69 | | (2,024.37) | 8899523 |
| 03/01/2020 | utility | Water - 12/16/19-01/17/20 | 54.37 | | (1,970.00) | 8899524 |
| 03/01/2020 | rent | Rent (03/2020) | 1,970.00 | | 0.00 | 9073276 |
| 04/01/2020 | utility | Gas - 01/10/20-02/11/20 | 277.27 | | 277.27 | 9175795 |
| 04/01/2020 | utility | Service Fee | 7.95 | | 285.22 | 9175796 |
| 04/01/2020 | utility | Sewer - 01/17/20-02/17/20 | 54.36 | | 339.58 | 9175797 |
| 04/01/2020 | utility | Trash - 03/01/20-03/31/20 | 37.05 | | 376.63 | 9175798 |
| 04/01/2020 | utility | Trash - 08/14/19-08/14/19 | (0.71) | | 375.92 | 9175799 |
| 04/01/2020 | utility | Water - 01/17/20-02/17/20 | 49.50 | | 425.42 | 9175800 |
| 04/01/2020 | rent | Rent (04/2020) | 1,970.00 | | 2,395.42 | 9326535 |
| 04/01/2020 | | chk# :ACH-WEB Online Payment - EFT Payment Paid by Roommate Damita David(r0159709).Web - Resident Services | | 2,395.42 | 0.00 | 4176050 |
| 05/01/2020 | utility | Gas - 02/11/20-03/10/20 | 235.38 | | 235.38 | 9454407 |
| 05/01/2020 | utility | Service Fee | 7.95 | | 243.33 | 9454408 |
| 05/01/2020 | utility | Sewer - 02/17/20-03/17/20 | 60.40 | | 303.73 | 9454409 |
| 05/01/2020 | utility | Trash - 03/31/20-04/30/20 | 34.74 | | 338.47 | 9454410 |
| 05/01/2020 | utility | Water - 02/17/20-03/17/20 | 54.37 | | 392.84 | 9454411 |
| 05/01/2020 | rent | Rent (05/2020) | 1,970.00 | | 2,362.84 | 9619487 |
| 05/01/2020 | | chk# :ACH-WEB Online Payment - EFT Payment Paid by Roommate Damita David(r0159709).Web - Resident Services | | 2,362.84 | 0.00 | 4275971 |
| 06/01/2020 | utility | Gas - 03/10/20-04/09/20 | 98.54 | | 98.54 | 9753779 |
| 06/01/2020 | utility | Service Fee | 7.95 | | 106.49 | 9753780 |
| 06/01/2020 | utility | Sewer - 03/17/20-04/16/20 | 54.36 | | 160.85 | 9753781 |
| 06/01/2020 | utility | Trash - 04/30/20-05/31/20 | 34.74 | | 195.59 | 9753782 |
| 06/01/2020 | utility | Water - 03/17/20-04/16/20 | 49.50 | | 245.09 | 9753783 |
| 06/01/2020 | rent | Rent (06/2020) 15 days | 985.00 | | 1,230.09 | 9934711 |
| 06/01/2020 | rent | Rent (06/2020) 15 days | 985.00 | | 2,215.09 | 9934712 |
| 06/01/2020 | | chk# :ACH-WEB Online Payment - EFT Payment Paid by Roommate Damita David(r0159709).Web - Resident Services | | 2,215.09 | 0.00 | 4413718 |
| 07/01/2020 | utility | Gas - 04/09/20-05/12/20 | 95.25 | | 95.25 | 10073540 |
| 07/01/2020 | utility | Service Fee | 7.95 | | 103.20 | 10073541 |

| Date | Type | Description | Charges | Payments | Balance | Ref |
|---|---|---|---|---|---|---|
| 07/01/2020 | utility | Sewer - 04/16/20-05/18/20 | 60.40 | | 163.60 | 10073543 |
| 07/01/2020 | utility | Trash - 06/01/20-07/06/20 | 37.45 | | 200.65 | 10073543 |
| 07/01/2020 | utility | Water - 04/16/20-05/18/20 | 54.37 | | 255.02 | 10073544 |
| 07/01/2020 | rent | Rent (07/2020) | 1,970.00 | | 2,225.02 | 10259864 |
| 07/01/2020 | exmptfee | Insurance Exemption Fee (07/2020) | 14.95 | | 2,239.97 | 10259865 |
| 07/01/2020 | | chk# :ACH-WEB Online Payment - EFT Payment Paid by Roommate Damita David(r0159709).Web - Resident Services | | 2,239.97 | 0.00 | 4517759 |
| 08/01/2020 | utility | Gas - 05/12/20-06/10/20 | 40.74 | | 40.74 | 10416702 |
| 08/01/2020 | utility | Service Fee | 7.95 | | 48.69 | 10416703 |
| 08/01/2020 | utility | Sewer - 05/18/20-06/16/20 | 54.36 | | 103.05 | 10416704 |
| 08/01/2020 | utility | Trash - 07/01/20-07/31/20 | 34.74 | | 137.79 | 10416705 |
| 08/01/2020 | utility | Water - 05/18/20-06/16/20 | 49.50 | | 187.29 | 10416706 |
| 08/01/2020 | rent | Rent (08/2020) | 1,970.00 | | 2,157.29 | 10614929 |
| 08/01/2020 | exmptfee | Insurance Exemption Fee (08/2020) | 14.95 | | 2,172.24 | 10614930 |
| 08/01/2020 | | chk# :ACH-WEB Online Payment - EFT Payment Paid by Roommate Damita David(r0159709).Web - Resident Services | | 2,157.29 | 14.95 | 4657563 |
| 08/24/2020 | exmptfee | Exempt Fee Reversal – July Compliant (Reinstated) | (14.95) | | 0.00 | 10910660 |
| 08/24/2020 | exmptfee | Exempt Fee Reversal - August Compliant (Reinstated) | (14.95) | | (14.95) | 10910661 |
| 09/01/2020 | utility | Gas - 06/10/20-07/10/20 | 35.54 | | 20.59 | 10779675 |
| 09/01/2020 | utility | Service Fee | 7.95 | | 28.54 | 10779676 |
| 09/01/2020 | utility | Sewer - 06/16/20-07/16/20 | 60.40 | | 88.94 | 10779677 |
| 09/01/2020 | utility | Trash - 07/31/20-08/31/20 | 34.74 | | 123.68 | 10779678 |
| 09/01/2020 | utility | Water - 06/16/20-07/16/20 | 54.37 | | 178.05 | 10779679 |
| 09/01/2020 | rent | Rent (09/2020) | 1,970.00 | | 2,148.05 | 10955772 |
| 09/01/2020 | exmptfee | Insurance Exemption Fee (09/2020) | 14.95 | | 2,163.00 | 10955773 |
| 09/01/2020 | | chk# :ACH-WEB Online Payment - EFT Payment Paid by Roommate Damita David(r0159709).Web - Resident Services | | 2,163.00 | 0.00 | 4798539 |
| 10/01/2020 | utility | Gas - 07/10/20-08/11/20 | 40.17 | | 40.17 | 11124209 |
| 10/01/2020 | utility | Service Fee | 7.95 | | 48.12 | 11124210 |
| 10/01/2020 | utility | Sewer - 07/16/20-08/14/20 | 102.68 | | 150.80 | 11124211 |
| 10/01/2020 | utility | Trash - 09/01/20-10/01/20 | 36.29 | | 187.09 | 11124212 |
| 10/01/2020 | utility | Water - 07/16/20-08/14/20 | 90.84 | | 277.93 | 11124213 |
| 10/01/2020 | rent | Rent (10/2020) | 1,970.00 | | 2,247.93 | 11308215 |
| 10/01/2020 | | chk# :ACH-WEB Online Payment - EFT Payment Paid by Roommate Damita David(r0159709).Web - Resident Services | | 2,247.93 | 0.00 | 4930189 |
| 11/01/2020 | utility | Gas - 08/11/20-09/10/20 | 41.21 | | 41.21 | 11512107 |
| 11/01/2020 | utility | Service Fee | 7.95 | | 49.16 | 11512108 |
| 11/01/2020 | utility | Sewer - 08/14/20-09/15/20 | 211.40 | | 260.56 | 11512109 |
| 11/01/2020 | utility | Trash - 10/01/20-10/31/20 | 35.12 | | 295.68 | 11512110 |
| 11/01/2020 | utility | Water - 08/14/20-09/15/20 | 204.96 | | 500.64 | 11512111 |
| 11/01/2020 | rent | Rent (11/2020) | 1,970.00 | | 2,470.64 | 11688432 |
| 11/01/2020 | | chk# :ACH-WEB Online Payment - EFT Payment Paid by Roommate Damita David(r0159709).Web - Resident Services | | 2,470.64 | 0.00 | 5058037 |
| 11/30/2020 | | chk# :ACH-WEB Online Payment - EFT Payment Paid by Roommate Damita David(r0159709).Web - Resident Services | | 2,521.50 | (2,521.50) | 5174704 |
| 12/01/2020 | utility | Gas - 09/10/20-10/12/20 | 53.25 | | (2,468.25) | 11952135 |
| 12/01/2020 | utility | Service Fee | 7.95 | | (2,460.30) | 11952136 |
| 12/01/2020 | utility | Sewer - 09/15/20-10/15/20 | 229.52 | | (2,230.78) | 11952137 |
| 12/01/2020 | utility | Trash - 10/31/20-11/30/20 | 35.12 | | (2,195.66) | 11952138 |
| 12/01/2020 | utility | Water - 09/15/20-10/15/20 | 225.66 | | (1,970.00) | 11952139 |
| 12/01/2020 | rent | Rent (12/2020) | 1,970.00 | | 0.00 | 12032474 |
| 12/20/2020 | utilconc | Credit-Water for 08/14/20-10/15/20-due to leak | (293.68) | | (293.68) | 12148926 |
| 12/20/2020 | utilconc | Credit-Sewer for 08/14/20-10/15/20-due to leak | (288.00) | | (581.68) | 12148927 |
| 12/31/2020 | | chk# :ACH-WEB Online Payment - EFT Payment Paid by Roommate Damita David(r0159709).Web - Resident Services | | 1,652.07 | (2,233.75) | 5292093 |
| 01/01/2021 | utility | Gas - 10/12/20-11/10/20 | 94.61 | | (2,139.14) | 12173055 |
| 01/01/2021 | utility | Service Fee | 7.95 | | (2,131.19) | 12173056 |
| 01/01/2021 | utility | Sewer - 10/15/20-11/13/20 | 66.44 | | (2,064.75) | 12173057 |
| 01/01/2021 | utility | Trash - 12/01/20-12/31/20 | 35.51 | | (2,029.24) | 12173058 |
| 01/01/2021 | utility | Water - 10/15/20-11/13/20 | 59.24 | | (1,970.00) | 12173059 |
| 01/01/2021 | rent | Rent (01/2021) | 1,970.00 | | 0.00 | 12361063 |
| 02/01/2021 | utility | Gas - 11/10/20-12/09/20 | 222.75 | | 222.75 | 12509155 |
| 02/01/2021 | utility | Service Fee | 7.95 | | 230.70 | 12509156 |

| Date | Type | Description | Charges | Payments | Balance | Trans ID |
|---|---|---|---|---|---|---|
| 02/01/2021 | utility | Sewer - 11/13/20-12/15/20 | 78.52 | | 309.22 | 12509157 |
| 02/01/2021 | utility | Trash - 12/30/20-01/30/21 | 35.51 | | 344.73 | 12509158 |
| 02/01/2021 | utility | Water - 11/13/20-12/15/20 | 68.98 | | 413.71 | 12509159 |
| 02/01/2021 | rent | Rent (02/2021) | 1,970.00 | | 2,383.71 | 12731676 |
| 02/01/2021 | | chk# :ACH-WEB Online Payment - EFT Payment Paid by Roommate Damita David(r0159709).Web - Resident Services | | 2,383.71 | 0.00 | 5428960 |
| 03/01/2021 | utility | Gas - 12/09/20-01/12/21 | 328.28 | | 328.28 | 12892241 |
| 03/01/2021 | utility | Service Fee | 7.95 | | 336.23 | 12892242 |
| 03/01/2021 | utility | Sewer - 12/15/20-01/18/21 | 78.52 | | 414.75 | 12892243 |
| 03/01/2021 | utility | Trash - 01/30/21-02/28/21 | 35.51 | | 450.26 | 12892244 |
| 03/01/2021 | utility | Water - 12/15/20-01/18/21 | 68.98 | | 519.24 | 12892245 |
| 03/01/2021 | rent | Rent (03/2021) | 1,970.00 | | 2,489.24 | 13088216 |
| 03/01/2021 | | chk# :ACH-WEB Online Payment - EFT Payment Paid by Roommate Damita David(r0159709).Web - Resident Services | | 2,489.24 | 0.00 | 5565898 |
| 03/31/2021 | | chk# :ACH-WEB Online Payment - EFT Payment Paid by Roommate Damita David(r0159709).Web - Resident Services | | 2,446.75 | (2,446.75) | 5709484 |
| 04/01/2021 | utility | Gas - 01/12/21-02/09/21 | 301.94 | | (2,144.81) | 13253005 |
| 04/01/2021 | utility | Service Fee | 7.95 | | (2,136.86) | 13253006 |
| 04/01/2021 | utility | Sewer - 01/18/21-02/17/21 | 66.44 | | (2,070.42) | 13253007 |
| 04/01/2021 | utility | Trash - 03/01/21-03/31/21 | 41.18 | | (2,029.24) | 13253008 |
| 04/01/2021 | utility | Water - 01/18/21-02/17/21 | 59.24 | | (1,970.00) | 13253009 |
| 04/01/2021 | rent | Rent (04/2021) | 1,970.00 | | 0.00 | 13604008 |
| 04/30/2021 | | chk# :ACH-WEB Online Payment - EFT Payment Paid by Roommate Damita David(r0159709).Web - Resident Services | | 2,386.96 | (2,386.96) | 5857413 |
| 05/01/2021 | utility | Gas - 02/09/21-03/10/21 | 244.73 | | (2,142.23) | 13794284 |
| 05/01/2021 | utility | Service Fee | 7.95 | | (2,134.28) | 13794285 |
| 05/01/2021 | utility | Sewer - 02/17/21-03/17/21 | 66.44 | | (2,067.84) | 13794286 |
| 05/01/2021 | utility | Trash - 03/31/21-04/30/21 | 38.60 | | (2,029.24) | 13794287 |
| 05/01/2021 | utility | Water - 02/17/21-03/17/21 | 59.24 | | (1,970.00) | 13794288 |
| 05/01/2021 | rent | Rent (05/2021) | 1,970.00 | | 0.00 | 13986368 |
| 06/01/2021 | utility | Gas - 03/10/21-04/12/21 | 138.83 | | 138.83 | 14341445 |
| 06/01/2021 | utility | Service Fee | 7.95 | | 146.78 | 14341446 |
| 06/01/2021 | utility | Sewer - 03/17/21-04/16/21 | 66.44 | | 213.22 | 14341447 |
| 06/01/2021 | utility | Trash - 04/30/21-05/31/21 | 38.60 | | 251.82 | 14341448 |
| 06/01/2021 | utility | Water - 03/17/21-04/16/21 | 59.24 | | 311.06 | 14341449 |
| 06/01/2021 | rent | Rent (06/2021) 16 days | 1,050.67 | | 1,361.73 | 14431723 |
| 06/01/2021 | rent | Rent (06/2021) 14 days | 1,008.00 | | 2,369.73 | 14431724 |
| 06/01/2021 | | chk# :ACH-WEB Online Payment - EFT Payment Paid by Roommate Damita David(r0159709).Web - Resident Services | | 2,369.73 | 0.00 | 6013006 |
| 07/01/2021 | utility | Gas - 04/12/21-05/11/21 | 96.67 | | 96.67 | 14803990 |
| 07/01/2021 | utility | Service Fee | 7.95 | | 104.62 | 14803991 |
| 07/01/2021 | utility | Sewer - 04/16/21-05/19/21 | 78.52 | | 183.14 | 14803992 |
| 07/01/2021 | utility | Trash - 06/01/21-07/01/21 | 41.18 | | 224.32 | 14803993 |
| 07/01/2021 | utility | Water - 04/16/21-05/19/21 | 68.98 | | 293.30 | 14803994 |
| 07/01/2021 | rent | Rent (07/2021) | 2,160.00 | | 2,453.30 | 14913279 |
| 07/01/2021 | | chk# PSN0120210737870876842 Rent | | 2,453.30 | 0.00 | 6163327 |
| 08/01/2021 | exmptfee | Insurance Exemption (08/2021) | 14.95 | | 14.95 | 15322689 |
| 08/01/2021 | utility | Gas - 05/11/21-06/10/21 | 72.93 | | 87.88 | 15455943 |
| 08/01/2021 | utility | Service Fee | 7.95 | | 95.83 | 15455944 |
| 08/01/2021 | utility | Sewer - 05/19/21-06/18/21 | 72.48 | | 168.31 | 15455945 |
| 08/01/2021 | utility | Trash - 07/01/21-07/31/21 | 38.60 | | 206.91 | 15455946 |
| 08/01/2021 | utility | Water - 05/19/21-06/18/21 | 64.11 | | 271.02 | 15455947 |
| 08/01/2021 | rent | Rent (08/2021) | 2,160.00 | | 2,431.02 | 15505119 |
| 08/01/2021 | | chk# :ACH-WEB Online Payment - EFT Payment Paid by Roommate Damita David(r0159709).Web - Resident Services | | 2,431.02 | 0.00 | 6336510 |
| 09/01/2021 | utility | Gas - 06/10/21-07/12/21 | 52.66 | | 52.66 | 15748654 |
| 09/01/2021 | utility | Service Fee | 7.95 | | 60.61 | 15748655 |
| 09/01/2021 | utility | Sewer - 06/18/21-07/19/21 | 66.44 | | 127.05 | 15748656 |
| 09/01/2021 | utility | Trash - 07/31/21-08/31/21 | 38.60 | | 165.65 | 15748657 |
| 09/01/2021 | utility | Water - 06/18/21-07/19/21 | 59.24 | | 224.89 | 15748658 |
| 09/01/2021 | exmptfee | Insurance Exemption (09/2021) | 14.95 | | 239.84 | 15974306 |
| 09/01/2021 | rent | Rent (09/2021) | 2,160.00 | | 2,399.84 | 16039704 |
| 09/01/2021 | | chk# PSN0120210944037007435 Rent | | 2,384.89 | 14.95 | 6481354 |

| Date | Type | Description | Charge | Payment | Balance | Ref |
|---|---|---|---|---|---|---|
| 10/01/2021 | utility | Gas - 07/12/21-08/10/21 | 38.64 | | 53.59 | 16585336 |
| 10/01/2021 | utility | Service Fee | 7.95 | | 61.54 | 16585337 |
| 10/01/2021 | utility | Sewer - 07/19/21-08/23/21 | 60.40 | | 121.94 | 16585338 |
| 10/01/2021 | utility | Trash - 09/01/21-10/01/21 | 40.33 | | 162.27 | 16585339 |
| 10/01/2021 | utility | Water - 07/19/21-08/23/21 | 54.37 | | 216.64 | 16585340 |
| 10/01/2021 | exmptfee | Ins Exempt (10/2021) | 14.95 | | 231.59 | 16604652 |
| 10/01/2021 | rent | Rent (10/2021) | 2,160.00 | | 2,391.59 | 16669770 |
| 10/01/2021 | | chk# PSN0120211078207299990 Rent | | 2,376.64 | 14.95 | 6675055 |
| 11/01/2021 | utility | Gas - 08/10/21-09/10/21 | 41.35 | | 56.30 | 16979634 |
| 11/01/2021 | utility | Service Fee | 7.95 | | 64.25 | 16979635 |
| 11/01/2021 | utility | Sewer - 08/23/21-09/23/21 | 60.40 | | 124.65 | 16979636 |
| 11/01/2021 | utility | Trash - 10/01/21-10/31/21 | 39.03 | | 163.68 | 16979637 |
| 11/01/2021 | utility | Water - 08/23/21-09/23/21 | 54.37 | | 218.05 | 16979638 |
| 11/01/2021 | rent | Rent (11/2021) | 2,160.00 | | 2,378.05 | 17231176 |
| 11/04/2021 | late | Late Fee | 125.00 | | 2,503.05 | 17388901 |
| 11/16/2021 | legal | Posting Fee for Demand Letter as of 16 Nov 202 | 40.00 | | 2,543.05 | 17441179 |
| 11/23/2021 | | chk# PSN 70115690 | | 2,750.69 | (207.64) | 6979464 |
| 11/24/2021 | exmptfee | Insurance Exemption (12/2021) | 14.95 | | (192.69) | 17696297 |
| 12/01/2021 | utility | Gas - 09/10/21-10/11/21 | 56.81 | | (135.88) | 17494120 |
| 12/01/2021 | utility | Service Fee | 7.95 | | (127.93) | 17494121 |
| 12/01/2021 | utility | Sewer - 09/23/21-10/20/21 | 54.36 | | (73.57) | 17494122 |
| 12/01/2021 | utility | Trash - 10/31/21-11/30/21 | 39.02 | | (34.55) | 17494123 |
| 12/01/2021 | utility | Water - 09/23/21-10/20/21 | 49.50 | | 14.95 | 17494124 |
| 12/01/2021 | rent | Rent (12/2021) | 2,160.00 | | 2,174.95 | 17779680 |
| 12/02/2021 | | chk# :ACH-WEB Online Payment - EFT Payment Paid by Roommate Damita David(r0159709).Web - Resident Services | | 2,174.95 | 0.00 | 7071989 |
| 01/01/2022 | utility | Gas - 10/11/21-11/09/21 | 196.70 | | 196.70 | 18079244 |
| 01/01/2022 | utility | Service Fee | 7.95 | | 204.65 | 18079245 |
| 01/01/2022 | utility | Sewer - 10/20/21-11/12/21 | 48.32 | | 252.97 | 18079246 |
| 01/01/2022 | utility | Trash - 12/01/21-12/31/21 | 39.46 | | 292.43 | 18079247 |
| 01/01/2022 | utility | Water - 10/20/21-11/12/21 | 44.63 | | 337.06 | 18079248 |
| 01/01/2022 | exmptfee | Insurance Exemption (01/2022) | 14.95 | | 352.01 | 18414147 |
| 01/01/2022 | rent | Rent (01/2022) | 2,160.00 | | 2,512.01 | 18490900 |
| 01/04/2022 | late | Late Fee | 125.00 | | 2,637.01 | 18679616 |
| 01/06/2022 | convfee | Convenience Fee for Receipt Ctrl #7314507 | 35.00 | | 2,672.01 | 18632536 |
| 01/06/2022 | | chk# 123345750 Credit Card On-Line Payment : Roommate Kimberly David (r0159710) : Web - Resident Services | | 2,547.01 | 125.00 | 7314507 |
| 02/01/2022 | utility | Gas - 11/09/21-12/09/21 | 286.58 | | 411.58 | 18810434 |
| 02/01/2022 | utility | Service Fee | 7.95 | | 419.53 | 18810435 |
| 02/01/2022 | utility | Sewer - 11/12/21-12/14/21 | 90.60 | | 510.13 | 18810436 |
| 02/01/2022 | utility | Trash - 12/31/21-01/30/22 | 39.46 | | 549.59 | 18810437 |
| 02/01/2022 | utility | Water - 11/12/21-12/14/21 | 78.72 | | 628.31 | 18810438 |
| 02/01/2022 | rent | Rent (02/2022) | 2,160.00 | | 2,788.31 | 19139964 |
| 02/04/2022 | late | Late Fee | 125.00 | | 2,913.31 | 19352532 |
| 02/18/2022 | legal | Posting Fee for Demand Letter as of 18 Feb 202 | 40.00 | | 2,953.31 | 19433559 |
| 03/01/2022 | utility | Gas - 12/09/21-01/11/22 | 331.35 | | 3,284.66 | 19884884 |
| 03/01/2022 | utility | Service Fee | 7.95 | | 3,292.61 | 19884885 |
| 03/01/2022 | utility | Sewer - 12/14/21-01/15/22 | 160.80 | | 3,453.41 | 19884886 |
| 03/01/2022 | utility | Trash - 01/30/22-02/28/22 | 39.46 | | 3,492.87 | 19884887 |
| 03/01/2022 | utility | Water - 12/14/21-01/15/22 | 143.02 | | 3,635.89 | 19884888 |
| 03/01/2022 | exmptfee | Insurance Exemption (03/2022) | 14.95 | | 3,650.84 | 19939604 |
| 03/01/2022 | rent | Rent (03/2022) | 2,160.00 | | 5,810.84 | 20018395 |
| 03/01/2022 | ppdefer | Payment Plan Deferral | (822.53) | | 4,988.31 | 20268036 |
| 03/01/2022 | ppdefer | Payment Plan Deferral | (2,160.00) | | 2,828.31 | 20268039 |
| 03/02/2022 | | chk# PSN0220220336783766224 Rent | | 2,953.31 | (125.00) | 7727365 |
| 03/04/2022 | late | Late Fee | 125.00 | | 0.00 | 20212642 |
| 03/15/2022 | pprecov | Payment Plan Recovery | 411.27 | | 411.27 | 20268037 |
| 03/15/2022 | pprecov | Payment Plan Recovery | 1,080.00 | | 1,491.27 | 20268040 |
| 03/15/2022 | | chk# PSN1520220356037025582 Rent | | 1,491.26 | 0.01 | 7801784 |
| 03/27/2022 | pprecov | Payment Plan Recovery | 411.27 | | 411.28 | 20268038 |
| 03/27/2022 | pprecov | Payment Plan Recovery | 1,080.00 | | 1,491.28 | 20268041 |
| 03/31/2022 | pprecov | Payment Plan Recovery | (0.01) | | 1,491.27 | 20838841 |

| Date | Type | Description | Charge | Payment | Balance | Ref |
|---|---|---|---|---|---|---|
| 03/31/2022 | | chk# PSN 03/31/2022 Manual PSN | | 1,080.00 | 411.27 | 7968570 |
| 03/31/2022 | | chk# PSN 03/31/2022 Manual PSN | | 411.26 | 0.01 | 7968571 |
| 04/01/2022 | utility | Gas - 01/11/22-02/09/22 | 470.97 | | 470.98 | 20343622 |
| 04/01/2022 | utility | Service Fee | 7.95 | | 478.93 | 20343623 |
| 04/01/2022 | utility | Sewer - 01/15/22-02/14/22 | 214.40 | | 693.33 | 20343624 |
| 04/01/2022 | utility | Water - 01/15/22-02/14/22 | 200.31 | | 893.64 | 20343625 |
| 04/01/2022 | exmptfee | Ins Exempt (04/2022) | 14.95 | | 908.59 | 20582134 |
| 04/01/2022 | rent | Rent (04/2022) | 2,160.00 | | 3,068.59 | 20692632 |
| 04/01/2022 | ppdefer | Payment Plan Deferral | (2,160.00) | | 908.59 | 20885303 |
| 04/01/2022 | ppdefer | Payment Plan Deferral | (1,033.58) | | (124.99) | 20885306 |
| 04/04/2022 | late | Late Fee | 125.00 | | 0.01 | 20895857 |
| 04/15/2022 | pprecov | Payment Plan Recovery | 1,080.00 | | 1,080.01 | 20885304 |
| 04/15/2022 | pprecov | Payment Plan Recovery | 516.79 | | 1,596.80 | 20885307 |
| 04/15/2022 | | chk# PSN1520220433322302584 Rent | | 1,596.80 | 0.00 | 8042074 |
| 04/27/2022 | pprecov | Payment Plan Recovery | 1,080.00 | | 1,080.00 | 20885305 |
| 04/27/2022 | pprecov | Payment Plan Recovery | 516.79 | | 1,596.79 | 20885308 |
| 04/28/2022 | | chk# 41491131 | | 1,596.80 | (0.01) | 8196769 |
| 05/01/2022 | utility | Gas - 02/09/22-03/10/22 | 270.47 | | 270.46 | 21024344 |
| 05/01/2022 | utility | Service Fee | 7.95 | | 278.41 | 21024345 |
| 05/01/2022 | utility | Sewer - 02/14/22-03/15/22 | 241.20 | | 519.61 | 21024346 |
| 05/01/2022 | utility | Trash - 03/01/22-03/31/22 | 44.65 | | 564.26 | 21024347 |
| 05/01/2022 | utility | Water - 02/14/22-03/15/22 | 231.83 | | 796.09 | 21024348 |
| 05/01/2022 | exmptfee | Ins Exempt (05/2022) | 14.95 | | 811.04 | 21230788 |
| 05/01/2022 | rent | Rent (05/2022) | 2,160.00 | | 2,971.04 | 21327729 |
| 05/01/2022 | ppdefer | Payment Plan Deferral | (936.04) | | 2,035.00 | 21581575 |
| 05/01/2022 | ppdefer | Payment Plan Deferral | (2,160.00) | | (125.00) | 21581578 |
| 05/04/2022 | late | Late Fee | 125.00 | | 0.00 | 21554648 |
| 05/15/2022 | pprecov | Payment Plan Recovery | 468.02 | | 468.02 | 21581576 |
| 05/15/2022 | pprecov | Payment Plan Recovery | 1,080.00 | | 1,548.02 | 21581579 |
| 05/17/2022 | | chk# PSN1720220577949993316 Rent | | 1,596.80 | (48.78) | 8289395 |
| 05/27/2022 | pprecov | Payment Plan Recovery | 468.02 | | 419.24 | 21581577 |
| 05/27/2022 | pprecov | Payment Plan Recovery | 1,080.00 | | 1,499.24 | 21581580 |
| 05/31/2022 | | chk# PSN3120220569350342037 Rent | | 1,596.80 | (97.56) | 8431406 |
| 06/01/2022 | utility | Gas - 03/10/22-04/11/22 | 241.29 | | 143.73 | 21702515 |
| 06/01/2022 | utility | Service Fee | 7.95 | | 151.68 | 21702516 |
| 06/01/2022 | utility | Sewer - 03/15/22-04/18/22 | 234.50 | | 386.18 | 21702517 |
| 06/01/2022 | utility | Trash - 03/31/22-04/30/22 | 41.86 | | 428.04 | 21702518 |
| 06/01/2022 | utility | Water - 03/15/22-04/18/22 | 223.95 | | 651.99 | 21702519 |
| 06/01/2022 | rent | Rent (06/2022) 20 days | 1,440.00 | | 2,091.99 | 22152816 |
| 06/01/2022 | rent | Rent (06/2022) 10 days | 1,020.00 | | 3,111.99 | 22152817 |
| 06/01/2022 | mtm | Month to Month Fee (06/2022) 10 days | 204.00 | | 3,315.99 | 22152818 |
| 06/04/2022 | late | Late Fee | 125.00 | | 3,440.99 | 22341223 |
| 06/20/2022 | | chk# PSN2020220627878811932 Rent | | 1,500.00 | 1,940.99 | 8562324 |
| 06/27/2022 | | chk# PSN2720220695084046769 Rent | | 550.00 | 1,390.99 | 8634927 |
| 07/01/2022 | utility | Gas - 04/11/22-05/10/22 | 145.18 | | 1,536.17 | 22817537 |
| 07/01/2022 | utility | Service Fee | 7.95 | | 1,544.12 | 22817539 |
| 07/01/2022 | utility | Sewer - 04/18/22-05/19/22 | 67.00 | | 1,611.12 | 22817540 |
| 07/01/2022 | utility | Trash - 04/30/22-05/31/22 | 41.86 | | 1,652.98 | 22817541 |
| 07/01/2022 | utility | Water - 04/18/22-05/19/22 | 55.40 | | 1,708.38 | 22817543 |
| 07/01/2022 | rent | Rent (07/2022) | 3,060.00 | | 4,768.38 | 22935314 |
| 07/01/2022 | mtm | Month to Month Fee (07/2022) | 612.00 | | 5,380.38 | 22935315 |
| 07/04/2022 | late | Late Fee | 125.00 | | 5,505.38 | 23142074 |
| 07/05/2022 | | chk# PSN0520220743845830518 Rent | | 2,400.00 | 3,105.38 | 8764897 |
| 07/18/2022 | legal | Posting Fee for Demand Letter as of 18 Jul 202 | 40.00 | | 3,145.38 | 23265866 |
| 07/20/2022 | | chk# :WIPS WIPS Receipt Reference Number: GA173100222500007 | | 1,645.38 | 1,500.00 | 8836015 |
| 08/01/2022 | utility | Gas - 05/10/22-06/10/22 | 76.49 | | 1,576.49 | 23319120 |
| 08/01/2022 | utility | Service Fee | 7.95 | | 1,584.44 | 23319123 |
| 08/01/2022 | utility | Sewer - 05/19/22-06/19/22 | 6.70 | | 1,591.14 | 23319124 |
| 08/01/2022 | utility | Trash - 06/01/22-07/01/22 | 44.65 | | 1,635.79 | 23319125 |
| 08/01/2022 | utility | Water - 05/19/22-06/19/22 | 10.51 | | 1,646.30 | 23319126 |
| 08/01/2022 | rent | Rent (08/2022) | 3,060.00 | | 4,706.30 | 23790515 |
| 08/01/2022 | mtm | Month to Month Fee (08/2022) | 612.00 | | 5,318.30 | 23790516 |

| Date | Type | Description | Charge | Payment | Balance | Ref |
|------|------|-------------|--------|---------|---------|-----|
| 08/01/2022 | ppdefer | Payment Plan Deferral | (3,060.00) | | 2,258.30 | 23993849 |
| 08/01/2022 | ppdefer | Payment Plan Deferral | (843.35) | | 3,101.65 | 23993852 |
| 08/04/2022 | late | Late Fee 8/2022 | 125.00 | | 1,500.00 | 24068189 |
| 08/15/2022 | pprecov | Payment Plan Recovery | 1,530.00 | | 3,030.00 | 23993850 |
| 08/15/2022 | pprecov | Payment Plan Recovery | 441.65 | | 3,471.65 | 23993853 |
| 08/27/2022 | pprecov | Payment Plan Recovery | 1,530.00 | | 5,001.65 | 23993851 |
| 08/27/2022 | pprecov | Payment Plan Recovery | 441.65 | | 5,443.30 | 23993854 |
| 09/01/2022 | utility | Gas - 06/10/22-07/12/22 | 54.75 | | 5,498.05 | 24174426 |
| 09/01/2022 | utility | Service Fee | 7.95 | | 5,506.00 | 24174427 |
| 09/01/2022 | utility | Sewer - 06/19/22-07/22/22 | 140.70 | | 5,646.70 | 24174428 |
| 09/01/2022 | utility | Trash - 07/01/22-07/31/22 | 41.86 | | 5,688.56 | 24174429 |
| 09/01/2022 | utility | Water - 06/19/22-07/22/22 | 126.63 | | 5,815.19 | 24174430 |
| 09/01/2022 | rent | Rent (09/2022) | 3,060.00 | | 8,875.19 | 24637643 |
| 09/01/2022 | mtm | Month to Month Fee (09/2022) | 612.00 | | 9,487.19 | 24637644 |
| 09/01/2022 | | chk# 1098018331 :CHECKscan Payment - Paul David Jr(r0159711) | | 4,000.00 | 5,487.19 | 9270412 |
| 09/04/2022 | late | Late Fee | 125.00 | | 5,612.19 | 24848243 |
| 09/09/2022 | legal | Posting Fee for Demand Letter as of 09 Sep 202 | 40.00 | | 5,652.19 | 24918296 |
| 09/15/2022 | legalexp | Legal Expense | 500.00 | | 6,152.19 | 24976057 |
| 09/15/2022 | legalexp | Eviction Admin Fee | 200.00 | | 6,352.19 | 24976055 |
| 10/01/2022 | utility | Gas - 07/12/22-08/10/22 | 62.68 | | 6,414.87 | 25314499 |
| 10/01/2022 | utility | Service Fee | 7.95 | | 6,422.82 | 25314500 |
| 10/01/2022 | utility | Sewer - 07/22/22-08/22/22 | 67.00 | | 6,489.82 | 25314501 |
| 10/01/2022 | utility | Trash - 07/31/22-08/31/22 | 41.86 | | 6,531.68 | 25314502 |
| 10/01/2022 | utility | Water - 07/22/22-08/22/22 | 59.20 | | 6,590.88 | 25314503 |
| 10/01/2022 | rent | Rent (10/2022) | 3,060.00 | | 9,650.88 | 25485600 |
| 10/01/2022 | mtm | Month to Month Fee (10/2022) | 612.00 | | 10,262.88 | 25485601 |
| 10/04/2022 | late | Late Fee | 125.00 | | 10,387.88 | 25737992 |
| 10/07/2022 | | chk# 146155 :CHECKscan Payment | | 4,200.00 | 6,187.88 | 9632896 |
| 10/10/2022 | legal | Posting Fee for Demand Letter as of 10 Oct 202 | 40.00 | | 6,227.88 | 25798742 |
| 10/17/2022 | legal | Attorney / filing fees | 500.00 | | 6,727.88 | 25860950 |
| 10/17/2022 | legalexp | Eviction Admin Fee | 200.00 | | 6,927.88 | 25860940 |
| 10/24/2022 | legalexp | Eviction Admin Fee 9/2022 | (200.00) | | 6,727.88 | 26225221 |
| 11/01/2022 | utility | Gas - 08/10/22-09/12/22 | 70.67 | | 6,798.55 | 25933543 |
| 11/01/2022 | utility | Service Fee | 7.95 | | 6,806.50 | 25933544 |
| 11/01/2022 | utility | Sewer - 08/22/22-09/23/22 | 67.00 | | 6,873.50 | 25933545 |
| 11/01/2022 | utility | Trash - 09/01/22-10/01/22 | 45.21 | | 6,918.71 | 25933546 |
| 11/01/2022 | utility | Water - 08/22/22-09/23/22 | 59.20 | | 6,977.91 | 25933547 |
| 11/01/2022 | rent | Rent (11/2022) | 3,060.00 | | 10,037.91 | 26348499 |
| 11/01/2022 | mtm | Month to Month Fee (11/2022) | 612.00 | | 10,649.91 | 26348500 |
| 11/04/2022 | late | Late Fee | 125.00 | | 10,774.91 | 26608149 |
| 12/01/2022 | utility | Gas - 09/12/22-10/11/22 | 110.05 | | 10,884.96 | 26788316 |
| 12/01/2022 | utility | Service Fee | 7.95 | | 10,892.91 | 26788317 |
| 12/01/2022 | utility | Sewer - 09/23/22-10/24/22 | 93.80 | | 10,986.71 | 26788318 |
| 12/01/2022 | utility | Trash - 10/01/22-10/31/22 | 43.75 | | 11,030.46 | 26788319 |
| 12/01/2022 | utility | Water - 09/23/22-10/24/22 | 80.84 | | 11,111.30 | 26788320 |
| 12/01/2022 | rent | Rent (12/2022) | 3,060.00 | | 14,171.30 | 27258915 |
| 12/01/2022 | mtm | Month to Month Fee (12/2022) | 612.00 | | 14,783.30 | 27258916 |
| 12/04/2022 | late | Late Fee | 125.00 | | 14,908.30 | 27492264 |
| 01/01/2023 | utility | Gas - 10/11/22-11/09/22 | 208.16 | | 15,116.46 | 27710292 |
| 01/01/2023 | utility | Service Fee | 7.95 | | 15,124.41 | 27710293 |
| 01/01/2023 | utility | Sewer - 10/24/22-11/30/22 | 154.10 | | 15,278.51 | 27710294 |
| 01/01/2023 | utility | Trash - 12/01/22-12/31/22 | 50.10 | | 15,328.61 | 27710295 |
| 01/01/2023 | utility | Trash - 10/31/22-11/30/22 | 43.75 | | 15,372.36 | 27710296 |
| 01/01/2023 | utility | Water - 10/24/22-11/30/22 | 140.09 | | 15,512.45 | 27710297 |
| 01/01/2023 | rent | Rent (01/2023) | 3,060.00 | | 18,572.45 | 28158288 |
| 01/01/2023 | mtm | Month to Month Fee (01/2023) | 612.00 | | 19,184.45 | 28158289 |
| 01/04/2023 | late | Late Fee | 125.00 | | 19,309.45 | 28379714 |
| 02/01/2023 | utility | Gas - 11/09/22-12/09/22 | 377.18 | | 19,686.63 | 29006007 |
| 02/01/2023 | utility | Service Fee | 7.95 | | 19,694.58 | 29006010 |
| 02/01/2023 | utility | Sewer - 11/30/22-01/09/23 | 187.60 | | 19,882.18 | 29006013 |
| 02/01/2023 | utility | Trash - 12/31/22-01/30/23 | 50.10 | | 19,932.28 | 29006015 |
| 02/01/2023 | utility | Water - 11/30/22-01/09/23 | 173.74 | | 20,106.02 | 29006008 |

| 02/01/2023 | rent | Rent (02/2023) | 3,060.00 | | 23,166.02 | 29183054 |
| 02/01/2023 | mtm | Month to Month Fee (02/2023) | 612.00 | | 23,778.02 | 29183055 |
| 02/04/2023 | late | Late Fee | 125.00 | | 23,903.02 | 29434778 |
| 02/28/2023 | hoadmin | V-351416 | 45.00 | | 23,948.02 | 30395714 |
| 03/01/2023 | utility | Gas - 12/09/22-01/10/23 | 533.34 | | 24,481.36 | 30032654 |
| 03/01/2023 | utility | Service Fee | 7.95 | | 24,489.31 | 30032655 |
| 03/01/2023 | utility | Trash - 01/30/23-02/28/23 | 50.11 | | 24,539.42 | 30032656 |
| 03/01/2023 | rent | Rent (03/2023) | 3,060.00 | | 27,599.42 | 30131824 |
| 03/01/2023 | mtm | Month to Month Fee (03/2023) | 612.00 | | 28,211.42 | 30131825 |
| 03/04/2023 | late | Late Fee | 125.00 | | 28,336.42 | 30458720 |
| 04/01/2023 | utility | Gas - 01/10/23-02/09/23 | 350.15 | | 28,686.57 | 30639470 |
| 04/01/2023 | utility | Service Fee | 7.95 | | 28,694.52 | 30639471 |
| 04/01/2023 | utility | Sewer - 01/09/23-02/09/23 | 147.40 | | 28,841.92 | 30639472 |
| 04/01/2023 | utility | Trash - 03/01/23-03/31/23 | 52.28 | | 28,894.20 | 30639473 |
| 04/01/2023 | utility | Water - 01/09/23-02/09/23 | 131.46 | | 29,025.66 | 30639474 |
| 04/01/2023 | rent | Rent (04/2023) | 3,060.00 | | 32,085.66 | 31030847 |
| 04/01/2023 | mtm | Month to Month Fee (04/2023) | 612.00 | | 32,697.66 | 31030848 |
| 04/04/2023 | late | Late Fee | 125.00 | | 32,822.66 | 31383922 |
| 05/01/2023 | utility | Gas - 02/09/23-03/10/23 | 224.73 | | 33,047.39 | 31569951 |
| 05/01/2023 | utility | Service Fee | 7.95 | | 33,055.34 | 31569952 |
| 05/01/2023 | utility | Sewer - 02/09/23-03/13/23 | 140.70 | | 33,196.04 | 31569953 |
| 05/01/2023 | utility | Trash - 03/31/23-04/30/23 | 49.01 | | 33,245.05 | 31569954 |
| 05/01/2023 | utility | Water - 02/09/23-03/13/23 | 126.63 | | 33,371.68 | 31569955 |

# Residential Lease

1. **Parties**

1.1   Parties to Lease.  **Progress Residential Borrower 9, LLC** ("Landlord") has entered into this Residential Lease ("Lease") with the following individuals (individually and collectively, "Resident"):

Name: **Paul David**          Email: **pgdsr@att.net**          Phone: **(770) 778-0673**

Name:   **Damita David**          Name:   **Tabitha David**

Name:   **Kimberly David**          Name:

Name:   **Paul David Jr**          Name:

1.2   Occupants. The following additional individuals will occupy the Premises ("Occupants"):

Name:   **Christian Harper**          Name:

Name:          Name:

Name:          Name:

1.3   <u>Communications.</u>  **Resident agrees to notify Property Manager in writing within five (5) days of any changes that occur from the original rental application, including changes to home or mobile phone numbers, email addresses, pets, and the addition or deletion of any Occupants**. **Resident must maintain a phone number local to the continental United States.** Resident authorizes Landlord and its agents to send text messages to any mobile phone number given, in order for Landlord to convey information regarding the Premises, including rent reminders, maintenance request information, and related messages. Resident understands that standard text messaging rates will apply to any messages received, and agrees not to hold Landlord or its agents liable for any electronic messaging charges or fees generated by this service.

Initials:  [PD]  [DD]  [kD]  [PDJ]  [TD]

1.4.   <u>Occupancy.</u> Resident represents, warrants and covenants that all persons who will reside at the Premises are listed above. Lessees include any individual over the age of 18 at the time of signing this Lease for whom the Premises is the primary residence.  Occupants include all minors and any individual, whether related or unrelated to any Resident or Occupant, who sleeps on the Premises for more than two (2) weeks in any calendar month at any point in the Lease Term. Resident will be held responsible for all actions and inactions of Occupants. All adult Occupants are subject to application approval requirements. All Occupants are subject to and governed by this Lease as if they were Residents, but only Resident shall be financially responsible for this Lease. If Resident violates this provision, Landlord may take all or any of the following actions: (i) declare Resident to be in default of this Lease and exercise Landlord's remedies; (ii) charge Resident, as additional Rent, an initial amount of $500.00 per person and $35.00 per day thereafter per person for each day Resident violates the occupancy restrictions.



DocuSign Envelope ID: 99CEF92D-F397-4766-896E-671F621ABD43

2.    **PREMISES**

   2.1.  <u>Property</u>. Landlord rents to Resident and Resident rents from Landlord the residential property, personal property and improvements located at the street address of: **5161 Madison Green Dr SW Mableton, GA 30126** ("Premises").

   2.2.  <u>Property Manager</u>. This Lease and the Premises will be managed by **Progress Residential Property Manager, LLC, (404) 596-8381, 2658 Holcomb Bridge Rd Suite 118, Alpharetta, Ga 30022** and CustomerCare@RentProgress.com (as updated from time to time by Landlord, ''Property Manager").

3.    **LEASE TERM, TERMINATION and TRANSFER**

   3.1.  <u>Term</u>. The Lease Term begins on **06/17/2021** ("Start Date") and ends on **06/20/2022** ("End Date"); such period being referred to as the "Lease Term".

   3.2.  <u>Possession of Premises</u>.  Resident is deemed to have possession of the Premises when keys are provided by Landlord. Notwithstanding whether Resident has possession, Resident shall be responsible for Rent and other fees under this Lease as of the Start Date and through the End Date or transfer of possession to Landlord, whichever is later.   Landlord is deemed to have possession of the Premises when keys are received from Resident, however, Landlord's acceptance of possession during the Lease Term shall not constitute a waiver any of Landlord's rights and remedies herein.

   3.3.  <u>Delay of Occupancy by Landlord</u>. **If Landlord is unable to deliver possession of the Premises within ten (10) days after the Start Date, Resident may terminate this Lease by giving written notice to Landlord before the Premises are made available for occupancy by Resident, and Landlord will refund the Security Deposit, Holding Fee (if any), and any Rent paid. Landlord shall not be liable for incidental or actual damages to Resident due to the delay.** Notwithstanding the foregoing, Resident shall not have the right to terminate this Lease because of delays caused by mere cleaning or make-ready work that does not affect habitability of the Premises.

   3.4.  <u>Resident's Refusal to Occupy</u>. If Resident refuses to take possession of the Premises after being made available by Landlord, the obligations of Landlord under this Residential Lease shall cease and Landlord shall have the right to retain Resident's Security Deposit and all other amounts collected by Landlord. Landlord's acceptance of Resident's Security Deposit and such other collected amounts do not waive Landlord's right to exercise other available remedies.

   3.5.  <u>Lease Termination; Month-to-Month Extension.</u> **Resident may terminate this Lease at the end of the Lease Term only by giving Property Manager sixty (60) days' prior written notice of Resident's intent to vacate.  Landlord may terminate this Lease at the end of the Lease Term by giving Resident sixty (60) days' prior written notice or as otherwise permitted herein. If neither party gives the requisite termination notice, then this Lease will continue on a month-to-month basis for successive one (1)- month terms until either party gives thirty (30) day notice to terminate a month-to-month tenancy. This shall not constitute a renewal of the Lease for any longer term.** During any month-to-month tenancy, all other Lease terms will continue to apply, except that the monthly rent payments shall be increased to 120% of market Rent for the Premises, without notice. **If the Resident provides notice of less than sixty (60) days of the intent to vacate, this will be considered late notice and the Resident will be charged Rent through the full sixty (60)-day notice period, prorated through the notice period.** Any offer of Landlord to enter into a new lease agreement or renewal term with the Resident is specifically contingent upon the Resident's account being in good standing.  In the event Resident is in default, monetary or otherwise, any renewal offers shall be deemed revoked and Resident shall vacate the Premises at the end of the Lease Term without further notice or action of Landlord.

   3.6.  <u>Holdover</u>. If Resident fails to timely vacate the Premises after giving notice of termination to Property Manager or after receiving a Landlord notice of termination, the Resident shall be considered a tenant at sufferance and the holdover will not constitute a renewal or an extension for any further term. Rent during the holdover will be two times (2x) the

© 2021 Progress Residential                    Residential Lease (2021.v2)                    

Monthly Rent, calculated on a daily basis, and will be immediately due and payable without notice or demand.  In addition, Resident will indemnify Landlord and Landlord's prospective new residents of the Premises for any damages, including, without limitation, lost Rent, lodging expenses, moving fees, costs of eviction, and attorneys' fees. Landlord does not consent to any holding over by Resident. This paragraph does not limit or waive any other rights or remedies of Landlord.

3.7.   <u>Lease Transfer.</u> During the Lease Term, as long as Resident is not and has not been in default, Resident may request to transfer to another available residence managed by the Property Manager, subject to (i) applicable income and credit qualification, (ii) execution of a new lease with a term of at least one(1) year, and (iii) the payment of a transfer fee equal to one (1) months' current Monthly Rent, plus any applicable tax.

3.8.   <u>Early Termination.</u> Resident agrees to pay an amount equal to two months' Rent as liquidated damages or an early termination fee if Resident elects to terminate the Lease for any reason (other than those identified in Section 17, below) prior to the End Date of the Lease.  Upon receipt of payment, the Landlord waives the right to seek additional Rent beyond the date that the Landlord retakes possession, and such termination will not be considered an event of default. Failure to make timely payment may result in a default of the Lease, and Landlord shall have all rights and remedies available hereunder.

Initials: ____ , ____ , ____ , ____ , ____ ,

3.9.   <u>NO ORAL NOTICE; TIME IS OF THE ESSENCE.</u> Oral notification is not sufficient under any circumstances. Time is of the essence for providing notice of Lease termination, and strict compliance with the dates by which such notice must be provided is required.

4.   **RENT**:  "Rent" will mean all Monthly Rent and additional rental charges that Resident is obligated to pay Landlord under the terms of this Lease.
   4.1.   <u>Monthly Rent.</u> Resident will pay rent per month plus any applicable sales or rental tax ("Monthly Rent"), as follows:
   06/17/2021 – 06/20/2022: **$2,160.00**.
   – : **$N/A**
   Rent shall be due without notice, demand or deduction. If Lease Term is shorter than twelve (12) full months, a short term premium in the amount of $ **.00** will apply, and be payable on a monthly basis as Rent

   4.2.   <u>When Payable; Priority of Payments.</u> Monthly Rent is payable in advance on or before the first (1st) day of each calendar month and delinquent if not **<u>received</u>** by the second (2nd) day of each calendar month. All payments made by Resident to Landlord under this Lease will, without regard to their characterization or earmarking by Resident, be allocated by Landlord in the following order of priority: (i) to late charges and amounts owed from maintenance charge-backs, fines caused by Resident, and other Resident actions or inactions in violation of this Lease; (ii) to delinquent Rent; and (iii) to current Rent due and payable.

   4.3.   <u>Procedure for Making Payments.</u> Resident may not pay Rent in cash.  Rent may be paid only through the following methods:

   (a)   Electronic ACH payment, debit or credit card, or "Text to Pay," through Landlord's online payment portal available at www.rentprogress.com (additional fees for debit and credit card payments may apply); or
   (b)   Check, money order or cashier's check payable to Landlord by mail to Landlord **at PO Box 4300, Scottsdale, AZ 85261.**

   4.4.   <u>Acceptance of Partial Rent.</u> **Rent must be paid in full.**  Any acceptance of partial Rent by Landlord is specifically



DocuSign Envelope ID: 99CFE92D-F397-4766-806E-671F621ABD43

accepted with full reservation of rights, and will not waive Resident's breach of this Lease or limit Landlord's rights to evict Resident through eviction proceedings, whether filed before or after Landlord's acceptance of any such partial Rent payment.

5.    **LATE CHARGES; OTHER FEES.  Any payment due under this Lease that is not paid timely and in full shall be subject to fees and charges, which shall be deemed additional Rent.**

5.1.    <u>Late Charges.</u> Any Rent payment or portion thereof <u>received by Landlord or its agents</u> after the third (3rd ) day of the month will incur a late charge of $125.00 plus any applicable tax on the entire overdue amount ("Late Charge"), which will be charged on the fourth (4th) day of the month and each month thereafter in which any Rent payment, portion thereof, or Late Charge, remains outstanding. If Resident pays Rent late on two (2) or more instances, then Landlord reserves the right to increase the Late Charge as permitted by applicable law and subject to the terms of any security deposit addendum attached hereto.  In no event will any late charge payable under this Lease exceed the maximum late charge allowed under applicable law, and in the event Landlord collects any late charge in excess of the maximum amount allowed under applicable law, any such excess shall be credited to Resident's obligations under this Lease or, if this Lease has terminated or expired and Resident has no further obligations to Landlord at such time, any such excess shall be refunded to Resident.

5.2.    <u>Insufficient Funds Fee.</u> If a check tendered in payment of any obligation under this Lease is dishonored or returned by the financial institution on which it is drawn for any reason, Landlord shall be entitled to charge an insufficient funds fee of forty dollars ($40.00) plus any applicable tax ("NSF Fee") in addition to all other late charges, fees, and expenses which Landlord may be entitled to recover either under this Lease or applicable law. If two (2) checks are returned at any time during the Lease Term, Resident shall make all subsequent payments in cashier's check or money order, as Landlord  may elect; cash will not be accepted.

5.3.    <u>Posting Fee.</u> Resident shall pay a posting fee of forty dollars ($40.00) plus any applicable tax ("Posting Fee") for notice to pay Rent, notice of non-compliance, or any other postings or notices required by law in connection with Landlord's remedies.

5.4.    <u>Additional Rent; No Waiver.</u> Any Late Charge, NSF Fee, or Posting Fee due must be paid with the current installment of Rent and all such fees incurred by Resident will be deemed additional Rent. Landlord's acceptance of any of the fees will not constitute a waiver as to any Resident default, an extension of payment due dates, or a waiver of any other rights and remedies.

5.5.    <u>HOA or Municipality Non-Compliance Fee.</u> If Landlord receives notice of a CC&R, city code, or other muncipal violation at the Premises, and the Landlord determines that the violation is attributable to action or inaction of the Resident, a Non-Compliance Fee of $45.00 will be charged for notifying you of the violation, in addition to any fines assessed by the HOA, municipality, or other governing body.

5.6.    <u>Administrative Fees; Other Fees.</u> Administrative fees may apply from time to time, as follows:

(a)    A nonrefundable Lease Administration Fee in the amount of $125 will be due and owing prior to Resident taking possession of the Premises.

(b)    An Eviction Administration Fee in the amount of $200 will be charged for the Property Manager's preparation of documents for an eviction proceeding.

(c)    An Amendment fee in the amount of $100 will be charged for documentation of Resident-requested changes to the Lease during the Lease term, including but not limited to the addition or removal of Residents or adult Occupants, and the addition of pets.

© 2021 Progress Residential                    Residential Lease (2021.v2)



6.   **SECURITY DEPOSIT**: Resident must pay to Landlord an amount equal to **$1,970.00** as a security deposit ("Security Deposit") on or before the date Resident enters into this Lease. The Security Deposit shall be paid by certified check, money order or cashier's check separately from Rent and fees paid hereunder.  The Security Deposit shall stand as a continuing and unconditional guarantee for the terms of this Lease and Resident's obligations under applicable law, as well as security for the Rent, and to indemnify Landlord against any damage to the Premises or furnishings, whether caused by Resident, Occupants, or members of their family or persons upon the Premises with their consent and further to indemnify Landlord for any breach of this Lease.

6.1.   <u>No use as Rent</u>. **THE SECURITY DEPOSIT MAY NOT BE USED BY RESIDENT IN LIEU OF PAYMENT OF ANY RENT DUE UNDER THIS LEASE UNLESS EXPRESSLY AGREED TO BY LANDLORD IN IT'S SOLE DISCRETION.**

6.2.   <u>Charges After Move-Out.</u> After you move out, there will be a move-out inspection of the Premises. You will receive notice of the inspection and a reasonable opportunity to attend, if and when required by local law. During the inspection, the condition of the Premises will be reviewed in detail along with the move-in inspection report (if applicable) and any photographs of the Premises taken before or at the time of move-in, or during the mid-year inspection (if any). Any damage or defect of the Premises that was not present at move-in, "ordinary wear and tear" only excepted, will be the Resident's responsibility to repair or remediate, and the Landlord will charge the Resident's security deposit accordingly. See the attached Repair Services Cost Sheet Addendum for examples of charges that may be incurred. The Premises must be professionally cleaned, including carpets. If the Premises are not left professionally clean, or if repairs that have been determined to be the Resident's responsibility are necessary, a minimum charge of **$450.00** shall be deducted from the Security Deposit to cover the cost of cleaning the Premises.

6.3.   <u>Ordinary Wear and Tear.</u> For the purposes of this Lease, "ordinary wear and tear" is defined as usual degradation which results from the day to day use of the Premises and from lapse of time, such as the normal ageing of the Premises, its fixtures, flooring, appliances, hardware and finishes, and shall not include any of the following: improper usage, neglect or abuse, failure to professionally clean the Premises, failure to return the Premises without defect or damage (including but not limited to damaged flooring, appliances, walls or paint), pet odors and stains, and failure to comply with the maintenance obligations described in Section 9 below.

6.4.   <u>Replenishment and Assignment.</u> If any part of the Security Deposit shall have been used by Landlord in accordance with the terms of this Lease or applicable law, Resident shall, upon demand, immediately deposit with Landlord a sum equal to the amount so applied by Landlord, so that Landlord shall have the full Security Deposit on hand at all times during the Lease Term, and any Renewal Terms or holdover thereof. In the event of the sale, transfer or assignment by Landlord of Landlord's interest in the Premises or this Lease, Landlord shall have the right to transfer the Security Deposit to the transferee, whereupon Landlord shall be released from all liability for the Security Deposit and Resident shall look solely to the new landlord for return of the Security Deposit.

6.5.   <u>No Interest</u>. No interest will be paid on the Security Deposit unless required by applicable law.

7.   **USE AND OCCUPANCY.**

7.1. <u>Condition of Premises.</u> Resident will inspect the Premises and agrees to accept the condition "AS IS" with no warranties or promises express or implied.  Resident will personally examine the Premises prior to taking possession, and by taking possession of the Premises agrees that the Premises are suitable for Resident's occupancy. All visible damage or defect of the Premises must be noted at move-in on a move-in inspection report or written communication to the Property Manager. The absence of any such note will be conclusive evidence of the Resident's responsibility of the damage or defect. Resident accepts the Premises and all furnishings, appliances, landscaping and fixtures AS IS, WITH ALL FAULTS. Except as expressly provided herein, Landlord has made no express or implied representations or warranties regarding the condition of the Premises. The Premises and any personal property or fixtures included

5

© 2021 Progress Residential                              Residential Lease (2021.v2)



therewith are clean and in operable condition. **The taking of possession of the Premises by Resident shall be conclusive evidence that the Premises were in satisfactory condition at the time such possession was taken.**

7.2.  <u>Private Residential Use Only</u>. The Premises may be used as a private residence only. The Premises may not be used for operation of a business or commercial activity of any type, including, but not limited to, in-home child care.

7.3.  <u>Assignment and Subletting.</u> Resident may not assign this Lease or sublet the Premises, including temporary or "micro" tenancies such as home-sharing or vacation rentals. Any such assignment or sublease of this Lease is immediately voidable by Landlord. Landlord's consent to any one assignment, transfer or sublease will not be construed as consent to any subsequent assignment, transfer or sublease and will not release Resident of Resident's obligations under this Lease.

7.4.  <u>Homeowner Association Rules</u>. If the Premises are located within homeowner, neighborhood, or condominium association ("HOA"), then Resident's rights under this Lease shall be subject to the covenants, restrictions and requirements of such HOA relating to the Premises, which covenants, conditions and restrictions are hereby incorporated herein ("CC&Rs").

   (a)    Compliance.  Resident must review and comply with all CC&Rs requirements affecting the Premises. If Landlord receives notice of a CC&R violation at the Premises, and the Landlord determines that the CC&R violation is attributable to action or inaction of the Resident, an HOA Non-Compliance Fee of $45.00 will be charged for notifying you of the violation.  In addition, Resident will be required to reimburse Landlord for any fines or other charges assessed against the Premises or Landlord for Resident's failure to comply with any such CC&Rs, whether or not Landlord has been notified of the violations or provided notice to the Resident.  If the Resident fails to remedy the violation within the appropriate time period, the Landlord or Property Manager is authorized to cure the violation on the Resident's behalf, and Resident shall be required to pay the cost to cure.

   (b)    Approval.  If (i) an HOA requires approval of this Lease and this Lease is not approved by the HOA for any reason, the Resident agrees to comply with the demand of the HOA including but not limited immediately and peacefully vacating the Premises (if possession has already been given), and curing violations and/or paying fines, and in all cases holding Landlord harmless for such non-approval.  Resident shall look solely to the HOA that has denied Lease approval for redress of any grievances caused thereby.

7.5.  <u>Neighborhood Conditions.</u> Resident is advised to satisfy himself or herself as to neighborhood or area conditions, including schools, proximity and adequacy of law enforcement, crime statistics, proximity of registered felons or offenders, fire protection, other governmental services, availability, adequacy and cost of any wired, wireless internet connections or other telecommunications or other technology services and installations, proximity to commercial, industrial or agricultural activities, existing and proposed transportation, construction and development that may cause or affect noise, view, or traffic, airport noise, noise or odor from any source, wild and domestic animals, other nuisances, hazards or circumstances, cemeteries, facilities and condition of common areas, conditions and influences of significance to certain cultures and/or religions, and personal needs, requirements and preferences of Resident.

7.6.  <u>Pets.</u> Resident may not harbor any pet on the Premises that is not identified in or otherwise permitted by the Pet Addendum, even if only temporarily. If Resident violates this provision, Landlord may take all or any of the following actions: (i) declare Resident to be in default of this Lease and exercise Landlord's remedies; (ii) charge Resident, as additional Rent, a Pet Default Fee of $200, plus the Pet Fee of $300.00 per pet and $ 35.00 per day thereafter per pet for each day Resident violates the pet restrictions; and (iii) charge to Resident Landlord's cost to exterminate the Premises for fleas and other insects, clean and deodorize Premises, and repair any damage caused by the

© 2021 Progress Residential                    Residential Lease (2021.v2)



unauthorized pet(s).

7.7.  <u>Prohibitions</u>. **Smoking is not allowed on the Premises**. Moreover, Resident shall not:

    (a)  install or permit any of the following on the Premises, even if only temporarily: spa, hot tub, above-ground pool, trampoline, or any item which may cause or causes a suspension or cancellation of property insurance coverage or increases property insurance premiums; or

    (b)  cause, or permit the Premises to be used in connection with, any activity that is a nuisance, offensive, noisy, or dangerous or that involves (i) repairing a vehicle; (ii) violation of any zoning ordinance, CC&R, or other local rule or regulation; (iii) illegal or unlawful activity; or (iv) obstruction, interference with, or infringement on the rights of other persons near or about the Premises.

7.8.  <u>Parking</u>. Resident shall only allow parking of Resident's and Occupants' personal vehicles at the Premises, subject to local rules and regulations and applicable CC&R's. Resident may not park or permit any person to park any vehicles on the grass or on the front or back yard. The driveway, garage, and/or parking space(s) are to be used for properly licensed and operable motor vehicles only and unless approved in writing by the Property Manager, may not be used for trailers, boats, campers, RVs, buses or trucks (other than pick-up trucks).  Parking areas must be kept clean. Vehicles leaking oil, gas or other fluids must not be parked on the Premises. Mechanical work or storage of inoperable vehicles is not permitted.

7.9.  <u>Storage</u>. Resident may store only personal property owned by Resident and Occupant(s) and may not store property of others.

8.  **LANDLORD'S MAINTENANCE OBLIGATIONS**

8.1.  <u>Maintenance</u>. Landlord will maintain, replace or repair any items on the Premises for which applicable law dictates Landlord is responsible. Financial responsibility for such maintenance will be subject to applicable law and the terms of this Lease:

    (a)  To the extent provided or owned by the Landlord, Landlord shall maintain, repair, or replace (as applicable), at Landlord's expense: the roof, front and back doors, foundation, HVAC, electrical system, plumbing, hot water tank, refrigerator, stove, microwave, dishwasher, structural components, exterior paint and siding (except for power-washing), locks, ceilings, exterior fencing, and Pool. Resident is responsible for notifying Landlord of any such maintenance needs. **Notwithstanding the foregoing, Resident shall be liable for any damage or loss caused or permitted to be caused by misuse, negligence, or action/inaction of Resident, Occupant or their guests or invitees.** The attached Repair Services Cost Sheet Addendum sets forth typical repair costs and fees that will be charged to the Resident for any such damage.

    (b)  Landlord WILL NOT pay for costs incurred to repair the following items unless caused by Landlord or Property Manager or by their negligence or misconduct or Act of God: (i) damage to windows, screens, or interior doors; (ii) damage from wastewater stoppages caused by foreign or improper objects in lines that exclusively serve Premises; (iii) items that are the responsibility of Resident; and (iv) items that are cosmetic in nature with no impact on the functionality or use of the item.

    (c)  To the extent found on the Premises, Landlord shall not be responsible for repairing or replacing the following features: built-in shelving or cabinetry in closets and garages, washer and dryer, outdoor grills/fireplaces and any gas or electrical lines thereto, sheds, water softeners, above-ground Pool or spas, Pool heaters, alarm systems, intercom systems, cable/satellite wiring and equipment, built-in audio systems, and central vacuum systems.

7



8.2.    <u>Maintenance Requests</u>. Resident shall make all requests for the above-described repairs by phone to **(404) 596-8381**, by email to customercare@rentprogress.com, or through the resident portal at www.rentprogress.com. If Resident is delinquent in Rent at the time a repair request is made, Landlord is not obligated to make such repair until the delinquency is cured. For emergency repairs, see section entitled "Emergencies," below.

(a)    Response Time. Property Manager will make reasonable efforts to commence non-emergency repairs within 72 hours after receiving repair request from Resident. Property Manager is not obligated to make repairs on a day other than a business day unless required to do so under applicable law. Trip Charges. Trip charges include any fees or charges that the maintenance technician may charge, in addition to a "trip fee", which shall be charged to Resident as additional Rent in the amount of at least $105, subject to change without notice should property manager's costs increase. Trip charges will be paid by Resident in the following situations: (i) for all repair calls to the Premises made at Resident's request, however, if the Property Manager determines that the repair falls under Landlord's maintenance obligations under this Lease, the trip charges will be waived; and (ii) if a maintenance technician is unable to safely access the Premises after making arrangements with Resident to complete a repair, whether or not the repair call was made at Resident's request.

(b)    <u>Repair Costs.</u> Refer to attached Repair Services Cost Sheet Addendum for examples of the cost to Resident of repairs and services for items not identified as Landlord Responsibility, and if undertaken by the Landlord, Property Manager or agent.

(c)    Residents shall notify Property Manager at the time of requesting a services if any occupant of the home is ill or showing signs of infectious disease, and will comply with Property Manager's reasonable requests to temporarily relocate from the Premises, self-quarantine within the Premises away from the area needing service, and other safety precautions.  Resident acknowledges and agrees that such an illness may limit the ability of Landlord or Property Manager to perform services on the Premises in a timely manner, and is responsible for and releases the Landlord and Property Manager for any claim or damages that may be incurred as a result of such delay.

8.3.    <u>Advance Payments and Reimbursements.</u> Landlord may require advance payment for repairs or payments to be paid by Resident. If advance payment is not required, Resident must promptly reimburse Landlord for all amounts due by Resident under this Lease.  Landlord reserves the right to perform a repair or service to a condition on the Premises that Landlord believes could impact health or safety, whether or not the condition is the Landlord's responsibility to remediate, and to charge the Resident the cost of the repair or service to be paid as additional Rent.

8.4.    <u>Pool</u>. Any pool, spa or other water feature (generally a "Pool") located on the Premises will be maintained by a service provider retained by Landlord or Property Manager. This maintenance cost in the amount of  **.00** per month will be charged monthly as additional Rent.  Pool maintenance is limited to a once per week service to ensure the filtration system and chemical balance is at proper levels. The service provider will also provide a general cleaning service of the Pool on their visit. The resident should maintain the Pool in between service dates only by skimming the surface and Pool floor as well as regularly emptying skimmer baskets and removing any flotation devices or Pool toys after utilizing the Pool. The resident should not add any chemicals to the Pool nor adjust any settings on the filtration system including but not limited to valve adjustment, timer adjustment, opening pump covers, opening filters etc.  Please contact Property Manager with all Pool maintenance or service needs. Resident agrees to cooperate with such maintenance by Property Manager and immediately notify Property Manager of any conditions affecting the Pool safety fencing or any enclosure screens, gates or barriers relating to the Pool.  Resident shall not remove, alter, destroy, damage, or otherwise modify any such Pool safety fencing, enclosure screens, gates, or barriers relating to the Pool.

© 2021 Progress Residential          Residential Lease (2021.v2)          

DocuSign Envelope ID: 99CEF92D-F397-4766-896F-871F621ABD43

8.5.  Pest Control. **Landlord will provide pest control only to address infestations that compromise the structural integrity of the Premises (e.g., termites, carpenter ants).**  Resident will immediately notify the Property Manager if Resident suspects this type of infestation.  Although all other pest control is the responsibility of the Resident, the Landlord reserves the right to remediate any pest control issues that it considers to be a health and safety issue and charge the Resident for the cost of the treatment as additional Rent.

8.6.  Replacement of Fixtures. Landlord reserves the right to replace any furnishings, appliances, or fixtures with similar items. Landlord is not required to replace any furnishings, appliances, or fixtures with the exact brand, style, grade, color or accessories, so long as the replacement is fit for its use.

8.7.  No Landlord Duty to Maintain Personal Property. Landlord will have no duty to maintain, repair or replace any appliances or other personal property owned or placed on the Premises by Resident.

8.8.  Limitation of Liability.  **There shall be no allowance to Resident and no liability on the part of Landlord by reason of inconvenience or annoyance arising from the making of any repairs, alterations, additions or improvements to the Premises.**

9.  RESIDENT'S MAINTENANCE OBLIGATIONS: **Resident shall maintain the Premises in good, clean and tenable condition throughout the tenancy.**  Resident is financially responsible for the minor repairs and ordinary maintenance of the Premises unless expressly stated otherwise in this Lease.  By way of example, Resident shall:

(a)  notify the Property Manager of any material issues with the Premises;
(b)  promptly dispose of all garbage in appropriate receptacles;
(c)  supply and change heating and air conditioning filters at least once a month;
(d)  supply and replace all light bulbs, fluorescent tubes, and batteries for smoke alarms, carbon monoxide detectors, garage-door openers, ceiling fan remotes, and other devices (of the same type and quality on the Premises on the Start Date);
(e)  take action to promptly eliminate any dangerous condition on the Premises;
(f)  repair all clogged drains and toilets, except when caused by roots or breakdown not caused by Resident;
(g)  repair damage to the Premises due to break-in, vandalism, or the fault of Resident or Occupant or Resident's or Occupant's guests or invitees;
(h)  winterize the Premises – e.g., maintain minimum levels of heat to prevent freezing of water pipes and outdoor spigots, wrapping of outside water main in winter, removal of snow accumulations, removal of ice from front of Premises, etc.;
(i)  repair or replace sprinkler heads and above-ground irrigation;
(j)  repair or replace mailboxes and pay for the community or group mailbox key(s);
(k)  replace any lost or misplaced keys;
(l)  pay for any periodic, preventative, or additional pest control or extermination services desired by Resident, including bed bugs, fleas, ticks, scorpions, ants, etc.;
(m)  comply with the Mold Addendum attached to this Lease; and
(n)  adhere to the requirements of the Resident Guide, as modified from time to time.

9.1.  Emergencies. Emergencies must be reported immediately to Property Manager at **(404) 596-8381**. Emergencies include, but are not limited to:

(a)  Electrical: sparking, fire, smoke, overheated fixtures.
(b)  Fire: Resident must first notify the fire department immediately, followed by an emergency call to Property Manager.

© 2021 Progress Residential                Residential Lease (2021.v2)                

DocuSign Envelope ID: 99CEF02D-F397-4766-896E-671F621ABD43

(c)  Lack of Heat: ONLY if it poses a health risk to Residents or Occupants.
(d)  Lack of Air Conditioning: ONLY if it poses a health risk to Residents or Occupants.
(e)  Heavy Structural Damage: roof, foundation or walls.
(f)  Plumbing: Flooding or stoppage of drains due to roots or breakdown of fixture not caused by Resident.
(g)  Theft: Resident must first notify police immediately.

9.2.  Exterior Maintenance. Resident is responsible for all Exterior Maintenance and for the maintenance of the fencing around the Yard, both at Resident's own expense. Unless prohibited by ordinance, applicable law, or HOA rules, Resident will water the Yard at reasonable and appropriate times. "Yard" means all lawn, shrubbery, bushes, flowers, gardens, trees, rocks, or other landscaping features and foliage on or encroaching on the Premises, but does not include common areas maintained by an HOA. "Exterior Maintenance" means performing activities such as, but not limited to, mowing, fertilizing, trimming bushes, tree trimming up to eight feet (8') in height, controlling pests in, and removing debris from the Yard, and power-washing the exterior of the Premises, including exterior walls, walkways and patios.

9.3.  Prohibitions. If Resident installs any fixtures on the Premises, authorized or unauthorized, such as additional smoke alarms, locks, alarm systems, cables, satellite dishes, or other fixtures, such fixtures will become the property of Landlord and may be removed by Landlord at Resident's expense, unless removed by Resident prior to Move-out and the Premises restored to original condition. Except as expressly permitted under this Lease or in writing by Landlord, Resident may not:
(a)  Remodel, paint, alter or structurally change the Premises or remove or add any fixtures;
(b)  install, change, or remove any part of the Premises;
(c)  remove, change, add, or re-key any lock;
(d)  make holes in the woodwork, floors, or walls, except that a reasonable number of small nails may be used to hang pictures in sheetrock;
(e)  permit water beds or other water furniture on the Premises;
(f)  install phone or video cables, outlets, antennas, satellite receivers, or alarm systems;
(g)  alter, replace, or remove flooring material, or wallpaper;
(h)  keep or permit any hazardous material on the Premises;
(i)  keep or permit any material or item which could cause any liability or fire or extended insurance coverage to be suspended or canceled or any premiums to be increased; or
(j)  dispose of any environmentally detrimental substance (e.g., motor oil or radiator fluid) on the Premises.

9.4  Failure to Maintain. If any damage, beyond ordinary wear and tear (as defined above), is caused by Resident, Occupant, their guests or invitees, Resident shall be responsible for such repairs and shall pay the vendor at time of repair or pay Landlord the cost of repair with the next rental payment as additional Rent.  Resident must use vendors acceptable to Landlord. Any services ordered directly by Resident without written authorization of Landlord will be at Resident's expense.  Notwithstanding any provision of this Lease to the contrary, any damage or injury to the Premises or any part thereof resulting from the misuse or negligence of Resident, Occupant, their guests or invitees shall be repaired by Resident immediately.  If Resident fails or refuses to comply with Resident's obligations under this Lease, Landlord may perform the repairs or maintenance work for Resident's account and the cost of such work shall be paid by Resident to Landlord as additional rent within five (5) days of Landlord providing a copy of the invoice reflecting such costs.

9.5  Obligations Upon Vacating Premises.  Upon termination of this Lease, Resident must (i) vacate and surrender the Premises (including any parking or storage space) to Property Manager, professionally clean, including professionally cleaned carpets and in as good condition as the Premises were at the beginning of the Lease Term, ordinary wear and tear (as defined above) only excepted; (ii) give Property Manager all copies of all keys or opening devices to the Premises, including any common areas; (iii) remove all debris and personal belongings; (iv) provide a copy of the receipt from the professional cleaning company to Property Manager in the manner directed by the Property

© 2021 Progress Residential                    Residential Lease (2021.v2)



DocuSign Envelope ID: 99CEF92D-F397-4766-806E-671F621ABD43

Manager prior to termination; and (v) give written notice to Property Manager of Resident's forwarding address.

9.5.1  Alterations and Improvements. All alterations/improvements made to the Premises, including any window treatments, light fixtures and other items mounted on the wall or ceiling, become Landlord's property upon termination of this Lease. Landlord may charge Resident for restoration of the Premises to the condition it was in prior to any alterations/ improvements.

9.5.2  Personal Property. All personal property required to be removed by Resident at the expiration or termination of this Lease which remains on the Premises after Resident has vacated shall be considered abandoned by Resident and, at the option of Property Manager, may either be retained as Landlord's property or may be removed and disposed of by Property Manager at Resident's expense.

9.5.3  Charges Against Security Deposits.  The Property Manager will conduct an inspection of the Premises after the Resident has vacated, and apply charges against the Security Deposit as provided in Section 6, above. Proof of professional cleaning

9.6  **Smoke/Fire Alarms, Carbon Monoxide Detectors**: The Premises are equipped with smoke/fire alarms and carbon monoxide detectors in accordance with applicable laws.  Disconnecting or intentionally damaging a smoke/fire alarm or carbon monoxide detector, failing to regularly replace batteries, or removing a battery without immediately replacing it with a working battery may subject Resident to civil penalties and liability for damages.

10. **DAMAGE TO PREMISES**:  The Resident shall be liable for any damage to the Premises because of the occurrence of fire, flooding or other casualty, unless sufficient evidence, as determined by a fire marshal, Landlord's insurance adjuster, professional of similar expertise, determines conclusively otherwise.  If the Premises (a) are destroyed or damaged to the extent that they become untenable because of the occurrence of fire, sinkhole, catastrophic ground cover collapse, flooding or other casualty, or (b) is otherwise determined by Landlord to contain a health and safety risk, this Lease shall terminate, the Resident shall vacate the property immediately, and all Rent shall be prorated between Landlord and Resident as of the date the Resident vacates the property.  If the Premises remain tenable after the occurrence of any casualty damage, Landlord either may within a reasonable time make, or require Resident or its insurer to make, all repairs required to restore the Premises to as good a condition as existed prior to the occurrence of such casualty, or Landlord may elect to cancel this Lease, and all Rent shall be prorated as of the date of such cancellation.  Property Manager shall make all determinations regarding whether the Premises are untenable, and Resident hereby releases, indemnifies and holds Landlord and Property Manager harmless from all claims, liability and damages related to such determinations or casualty.

11.  **INSURANCE**: At Resident's sole expense, Resident shall maintain a renter's insurance policy or the equivalent issued by a licensed insurance company of Resident's selection that provides at least $100,000 for liability coverage. Resident must provide Landlord with a copy of Resident's renter's insurance policy prior to move-in. The policy must name Landlord, Property Manager and their successors and assigns as additional insureds and/or additional interest and must remain in place through the Lease Term and any Renewal Term or holdover thereof. If Resident fails to acquire or maintain the renter's policy, Landlord reserves the right to take action as set forth under the Renters Insurance Program Addendum, attached, or purchase renter's insurance on behalf of Resident and charge the cost of the policy to Resident as Rent. Landlord shall also have the right to submit a claim against the renter's policy without Resident's approval or consent. Landlord or Landlord's insurance shall not be liable to Resident for loss of Resident's personal property, furnishings, or belongings.

12.  **UTILITIES**: Resident agrees to pay for all charges and deposits for all utilities and services used and consumed at the Premises during the Lease Term and any Renewal Term or holdover hereof (all such charges being referred to as "Utility Charges"), including, but not limited to, water, sewer, trash, gas, electricity, telephone, internet, cable television or security ("Utilities") as available at the Premises and regardless of the accountholder of such Utilities.  If the Premises utilitizes a septic tank, the cost of maintenance and service in the amount of **$39.60** per month will be charged monthly as additional Rent through Conservice.

11

© 2021 Progress Residential                          Residential Lease (2021.v2)



Please refer to the "Utility and Services Addendum" for additional information.

13. **RESIDENT DEFAULT**: If Resident fails to timely pay any amounts due under this Lease or otherwise fails to comply with the terms of this Lease, Resident will be deemed in immediate default.

13.1. <u>Remedies.</u> Landlord will be entitled to exercise any and all available legal remedies, including, any one or more of the following in accordance with applicable law: (i) terminate Resident's right to occupy the Premises; (ii) re-enter upon and take possession of the Premises; and/or (iii) declare the entire remaining unpaid Rent for the Lease Term to be immediately due and payable and take immediate action to recover and collect the same by any available procedure. In addition, in an event of monetary default, the Landlord in its sole discretion may apply some or all of the Security Deposit to outstanding balances and demand replenishment of the Security Deposit, which the Resident shall provide within thirty days of written demand.

13.2. <u>Resident Liability.</u> Subject to applicable law, in the event of a default, Resident will be liable for (i) any lost Rent; (ii) all costs incurred in connection with re-letting the Premises, including, but not limited to, leasing fees/commissions, advertising fees, utility charges, and any other expense reasonably incurred to re-let the Premises, including marketing fees in an amount approximately equal to one (1) months Rent; (iii) repairs needed to the Premises for use beyond normal wear and tear; (iv) all costs associated with eviction of Resident, including, but not limited to,  attorneys' fees, court costs, costs of service, witness fees, and prejudgment interest; (v) all costs incurred in connection with collection of amounts due under this Lease, including, but not limited to, administrative fees for lease enforcement, collection fees, late charges, and returned check charges; and (vi) any other recovery to which Landlord may be entitled.

14. **INDEMNIFICATION: RESIDENT AGREES TO INDEMNIFY, DEFEND (WITH COUNSEL REASONABLY ACCEPTABLE TO LANDLORD) AND HOLD HARMLESS LANDLORD, AND LANDLORD'S PROPERTY MANAGERS, AGENTS, AFFILIATES, EMPLOYEES AND VENDORS, FROM AND AGAINST ANY AND ALL CLAIMS, DEMANDS, LOSSES, LIABILITIES, CAUSES OF ACTION, SUITS, JUDGMENTS, DAMAGES, COSTS AND EXPENSES (INCLUDING ATTORNEYS' FEES) (COLLECTIVELY,  "CLAIMS"), ARISING FROM ANY OCCURRENCE IN OR ABOUT THE PREMISES, THE USE AND OCCUPANCY OF THE PREMISES, OR FROM ANY ACTIVITY, WORK, OR THING DONE, PERMITTED OR SUFFERED BY RESIDENT OR OCCUPANT OR THEIR AGENTS, EMPLOYEES, VENDORS, SHAREHOLDERS, PARTNERS, INVITEES, SUB-RESIDENTS OR ASSIGNEES IN OR ABOUT THE PREMISES OR DUE TO ANY OTHER ACT OR OMISSION OF RESIDENT OR OCCUPANT OR THEIR SUB-RESIDENTS, ASSIGNEES, INVITEES, EMPLOYEES, VENDORS OR AGENTS, OR FROM RESIDENT'S FAILURE TO PERFORM ITS OBLIGATIONS UNDER THIS LEASE (OTHER THAN ANY LOSS ARISING FROM THE SOLE OR GROSS NEGLIGENCE OF LANDLORD OR ITS AGENTS), INCLUDING, BUT NOT LIMITED TO, OCCASIONS WHEN SUCH LOSS IS CAUSED OR ALLEGED TO BE CAUSED BY THE JOINT, COMPARATIVE, OR CONCURRENT NEGLIGENCE OR FAULT OF LANDLORD OR ITS AGENTS, AND EVEN IF ANY SUCH CLAIM, CAUSE OF ACTION, OR SUIT IS BASED UPON OR ALLEGED TO BE BASED UPON THE STRICT LIABILITY OF LANDLORD OR ITS AGENTS. WITHOUT LIMITATION, THIS INDEMNITY PROVISION IS INTENDED TO INDEMNIFY LANDLORD AND ITS AGENTS AGAINST THE CONSEQUENCES OF THEIR OWN NEGLIGENCE OR FAULT AS PROVIDED ABOVE WHEN LANDLORD OR ITS AGENTS ARE JOINTLY, COMPARATIVELY, OR CONCURRENTLY NEGLIGENT WITH RESIDENT. THIS INDEMNITY PROVISION SHALL SURVIVE TERMINATION OR EXPIRATION OF THIS LEASE.  NOTWITHSTANDING ANYTHING TO THE CONTRARY CONTAINED IN THIS SECTION, RESIDENT SHALL NOT BE OBLIGATED TO INDEMNIFY LANDLORD FOR THAT LIABILITY OR THE COSTS CONNECTED THEREWITH IF THE LIABILITY IS BASED UPON AN ACT OR OMISSION OF LANDLORD OR ANY AGENT OR EMPLOYEE OF LANDLORD.**

15. **POOL INDEMNIFICATION AND WAIVER.**  If the Premises includes or has access to a Pool, which for the purposes of this section includes any lake, pond or other water feature, the Resident further acknowledges that, while the Pool is enclosed from the general  public, there may be no wall, fence or other barrier between the Pool and the residence on the Premises and there may be  no motorized safety cover on the Pool which requires the operation of a key switch. Resident assumes all risk relating to the Pool and access thereto and hereby waives any and all claims, now existing or hereafter arising, against



Landlord or its agents of any nature whatsoever regarding or relating in any way to the Pool and access thereto. In addition, Resident hereby indemnifies and holds Landlord and its agents harmless from any claims, now existing or hereafter arising, of any nature whatsoever regarding or relating in any way to the Pool and access thereto that might ever exist in favor of Resident or any of Resident's employees or invitees. Resident understands that the Pool is strictly an amenity and that the use of this amenity is not guaranteed under the terms of this Lease. Any interruption or non-availability of the use of the Pool will not violate any terms of this Lease.

16. **ACCESS TO PREMISES; COOPERATION**

16.1. <u>Inspections</u>. Property Manager shall have the right to enter the Premises at any time during the Lease Term or any renewal term or holdover thereof with Resident's consent or after twenty four (24) hours' notice (verbal or written) to Resident (except in case of emergency or to preserve the Premises or human life, in which case notice shall not be required), for the purpose of inspecting the Premises and documenting the condition of the Premises, preventing waste thereto, performing scheduled service or preventative maintenance, discharging any duty imposed upon Landlord by this Lease or by law, or for the purpose of showing the Premises to prospective purchasers, tenants, or lenders or for other reasonable business purposes.

16.2. <u>Signs; Cooperation with Financing and Sales Efforts:</u> Resident authorizes Landlord and Property Manager to prominently display a "For Sale", "For Lease", "For Rent" or similarly worded sign on the Premises at any time during the Lease Term or any renewal term or holdover thereof. In addition, Landlord, Property Manager or their agents may take interior or exterior photographs or images of the Premises and use the photographs or images in advertisements to lease or sell the Premises. Resident further agrees to cooperate with any financing, sale, or other transfer or disposition relating to the Premises and agrees to take such actions and execute such documents as reasonably requested by Landlord, Property Manager, a lender, a holder or beneficiary of any direct or indirect interest in the Premises, or any other party in connection with the business purposes of Landlord or its affiliates.

17. **SPECIAL STATUTORY RIGHTS**: Depending on the location of the Premises, Resident may have special statutory rights to terminate this Lease early in certain situations such as military service and domestic violence.

17.1. Military Service. As provided by the Servicemembers Civil Relief Act (50 USC Appx. §§501 et seq. as amended) and similar local laws, if Resident is or becomes a service member or dependent of a service member, Resident may terminate this Lease by delivering to Property Manager a written notice of termination and a copy of an appropriate government document providing evidence of (i) entrance into military service, (ii) military order for permanent change of station, (iii) military orders to deploy with a military unit for not less than 60 days; or (iv) a release from active duty after having leased the Premises while on active duty status and the Premises are 35 miles or more from the Resident's home of record. If any of these criteria are met, Resident must provide Property Manager with a written notice of termination. Termination of this Lease will be effective on the date stated on the notice that is at least 30 days after the Property Manager's receipt of the notice.

17.2. Domestic Violence. Landlord or Property Manager and Resident shall strictly follow all applicable law regarding Landlord's or Property Manager's and Resident's responsibilities and obligations under this Lease in circumstances of documented domestic violence.

17.3. Sexual Offenses or Stalking. Landlord and Resident shall strictly follow all applicable law regarding Landlord's or Property Manager's and Resident's responsibilities and obligations under this Lease in situations involving certain sexual offenses or stalking.

18. **CONDEMNATION:** If the whole or any part of the Premises are condemned for any public use or purpose by any legally



constituted authority, with the result that the same shall not be reasonably suitable for Resident's continued use and occupancy, Resident may cancel this Lease and Rent for the remainder of the month shall abate from and after the date of the taking. Landlord shall be entitled to any and all compensation paid by the condemning authority.

19. **RESIDENT ESTOPPEL CERTIFICATE:** On or before five (5) days after request by Landlord, Resident shall deliver to Landlord an estoppel certificate in such form and to such address as Landlord may require, certifying such matters regarding this Lease as Landlord may reasonably request.

20. **RESIDENT REPRESENTATIONS:** Resident warrants that all statements in Resident's rental application are true and correct. Landlord and its agents have relied upon Resident's rental application as an inducement for entering into this Lease, and Resident warrants to Landlord that the facts stated in such application are true and correct. If any facts stated in the application prove to be untrue, Landlord will have the right to terminate this Lease and collect from Resident any damages resulting therefrom.

21. **MEDIATION/WAIVER OF JURY TRIAL: Resident agrees to mediate with Landlord any dispute or claim arising between them out of this Lease, or any resulting transaction, before resorting to court action. Mediation fees, if any, will be divided equally among the parties involved. If, for any dispute or claim to which this paragraph applies, Resident commences an action without first attempting to resolve the matter through mediation or refuses to mediate after a request has been made, then Resident will not be entitled to recover attorney fees, even if they would otherwise be available to Resident in any such action. Each of the parties hereby irrevocably waives any right to trial by jury.**

22. **NO ENCUMBRANCES PERMITTED:** Resident has no authority or power to cause or permit any lien or encumbrance of any kind whatsoever, whether created by act of Resident, operation of law or otherwise, to attach to or be placed upon the Premises. Landlord and Property Manager will have the right at all times to post and keep posted on the Premises any notice which it deems necessary for protection from such liens. Resident covenants and agrees not to suffer or permit any lien of mechanics or materialmen or others to be placed against the Premises with respect to work or services claimed to have been performed for or materials claimed to have been furnished to Resident or the Premises, and, in case of any such lien attaching or notice of any lien, Resident covenants and agrees to cause it to be immediately released and removed of record. If any such lien is not released and removed within three (3) business days following the date notice of such lien is delivered by Landlord or Property Manager to Resident, Resident will be deemed in default hereunder and Landlord may immediately take all action necessary to release and remove such lien, without any duty to investigate the validity thereof, and all sums, costs and expenses, including reasonable attorneys' fees and costs, incurred by Landlord or Property Manager in connection with such lien will be deemed Rent under this Lease and will immediately be due and payable by Resident.

23. **CONSENT, APPROVAL, DETERMINATION OR ELECTION:** Where any provision of this Lease requires the consent, approval, determination, decision, election or other action of Landlord or Property Manager (collectively, "Landlord Decision") to any action to be taken or of any instrument or document submitted or furnished by Resident or otherwise, such Landlord Decision shall be in Landlord's (or Property Manager's, as applicable) sole and absolute discretion, unless expressly indicated otherwise. The Landlord Decision relating to or in connection with any such act, instrument, or document shall not be deemed a waiver of, or render unnecessary, a Landlord Decision to or for any subsequent similar or dissimilar acts  to be taken or instruments or documents to be submitted or furnished by Resident hereunder.

24. **ADDENDA:** Any (i) addenda, (ii) exhibits, and (iii) referenced rules, covenants or regulations, as Landlord may amend from time to time, are hereby incorporated into and made a part of this Lease and any violation thereof shall be a default of this Lease.  In the event of a conflict of terms between any addenda and the Lease, the terms of the addenda shall apply.

25. **FORCE MAJEURE:**  Landlord shall not be liable in any way to any Resident or third party for the failure of Landlord to perform or delay in performing under this Lease (and Landlord may suspend or terminate all or any portion of its obligations under this Lease) if such failure to perform or delay in performing results directly or indirectly from or is based upon, any force majeure event, including, without limitation, any acts of God, strikes, lockouts, boycotts, blockades, riots, acts of war, terrorism,

14



rebellion, insurrection, epidemics, pandemics, fire, communication line failures, computer viruses, power failures, earthquakes or any other similar cause or event beyond the reasonable control of Landlord.

## 26.    MISCELLANEOUS

26.1.  <u>Entire Agreement</u>. All understandings between the parties are incorporated in this Lease. Its terms are intended by the parties as a final, complete, and exclusive expression of their agreement with respect to its subject matter and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement.

26.2.  <u>Changes</u>. Neither this Lease nor any provision in it may be extended, amended, modified, altered or changed except in a writing signed by all parties hereto. This Lease is subject to the law of the state in which the Premises are located and will incorporate all changes required by amendment or successors to such law.

26.3.  <u>Counterparts</u>. This Lease and any supplement, addendum, or modification, including any copy, may be signed in two or more counterparts, each of which will be deemed an original and all of which taken together shall constitute one and the same agreement.

26.4.  <u>Severability</u>. If any term of this Lease is determined to be illegal, invalid or otherwise unenforceable by a court of competent jurisdiction, then to the minimum extent necessary to make such provision or this Lease legal, valid or otherwise enforceable, such term or provision shall be limited, construed or severed and deleted from this Lease, and the remaining portion of such term or provision and the remaining other terms and provisions hereof shall survive, remain in full force and effect, and continue to be binding.

26.5.  <u>Third Party Beneficiary</u>. Landlord's Property Manager is a third party beneficiary of this Lease.

26.6.  <u>Successors and Assigns</u>. All of the covenants, conditions and provisions of this Lease shall inure to the benefit of Landlord and its respective heirs, personal representatives, successors and assigns. Landlord shall have the right to, either voluntarily, involuntarily, by operation of law or otherwise, sell, assign, transfer or hypothecate the Premises and this Lease.

26.7.  <u>Joint and Individual Obligations</u>. If there is more than one individual who is a "Resident" or guarantor under this Lease, then each individual will be individually and completely (i.e., jointly and severally) responsible and liable for the full and complete performance of all obligations of Resident under this Lease, jointly with every other Resident, and individually, whether or not in possession. Landlord will have the right to pursue any claim of any nature whatsoever for breach of this Lease against any and all of the parties who have signed this Lease, whether a Resident or guarantor without the necessity of pursuing all of the parties in one action or at the same time.

26.8.  <u>Landlord Liability</u>. Landlord's liability under this Lease will be limited to Landlord's unencumbered interest in the Premises. Neither Landlord nor any of its partners, members, officers, directors, agents, affiliates, employees, shareholders, successors, assigns or pledges, including without limitation, the person signing this Lease on Landlord's behalf, will in any way be personally liable under this Lease.

26.9.  <u>Waiver</u>. Any failure of Landlord or Property Manager to enforce any provision of this Lease, or to demand strict compliance therewith, shall not be construed as modifying the terms of this Lease or as a waiver of Landlord's right to terminate this Lease or otherwise enforce the provisions hereof in connection with a Resident default or upon any subsequent default by Resident.

26.10.  <u>Notices.</u> Any notice provided for or permitted by this Lease to be given by one party to the other shall be deemed given (i) when physically received by personal delivery, (ii) three (3) days after being deposited in United States certified or registered mail, return receipt requested, postage prepaid, (iii) one (1) business day after being

15



DocuSign Envelope ID: 99CEE92D-F397-4766-806E-671F621ABD43

deposited with a nationally known commercial courier service (such as FedEx) addressed to the respective parties at the addresses first written above, or at such other address or addresses as the parties may specify from time to time in a written notice, or (iv) sent via email. Resident's address for the purposes of notice shall be the street address for the Premises. Landlord's and Property Manager's address for the purpose of notice shall be PO Box 4300, Scottsdale, Arizona 85261. Resident's email address is as set forth in Section 1.1, above. Property Manager's email address is as set forth in Section 2.2, above.

26.11. <u>Limitation of Warranties:</u> There are no implied warranties of merchantability, of fitness for a particular purpose, or of any other kind arising out of this Lease, and there are no warranties that extend beyond those expressly stated in this Lease.

26.12. <u>Careful Review.</u> This Lease is binding upon final acceptance and execution by the parties. READ ALL OF THE TERMS OF THIS LEASE CAREFULLY. If you do not understand the effect of this Lease, consult with an attorney before signing.

26.13. **To the extent any provision in the Lease or any Addendum hereto does not meet or conflicts with any requirement of applicable law, such requirement shall govern.**

27.  **ADDITIONAL NOTICES AND DISCLOSURES TO RESIDENT**

27.1. <u>Lead-Based Paint</u>. The Premises may have been constructed prior to 1978. Housing built before 1978 may contain lead- based paint. Lead from paint, paint chips, and dust can pose health hazards if not managed properly. Lead exposure is especially harmful to young children and pregnant women. Before renting pre-1978 housing, Landlord will disclose the potential for presence of lead-based paint and/or lead-based paint hazards in the dwelling. Resident will also receive a federally approved pamphlet on lead poisoning prevention, receipt of which Resident hereby acknowledges. In addition, Landlord provided and Resident acknowledges receipt of the disclosures on Landlord's lead disclosure form.

27.2. <u>Asbestos</u>. The Premises may contain asbestos, a substance known to cause cancer. If the Premises contains asbestos, disturbance or damage to certain interior surfaces may increase the potential exposure to this substance. Resident, Occupant, and their invitees and guests must not take or permit any action which in any way damages or disturbs the ceiling in the Premises or any part thereof, including, without limitation, (i) piercing the surface of the ceiling by drilling or any other method; (ii) hanging plants, mobiles or other objects from the ceiling; (iii) attaching any fixtures to the ceiling; (iv) allowing any objects to come in contact with the ceiling; (v) permitting water or any liquid, other than ordinary steam condensation, to come into contact with the ceiling; (vi) painting, cleaning or undertaking any repairs of any portion of the ceiling; (vii) replacing light fixtures; (viii) undertaking any activity which results in vibration which may cause damage to the ceiling; (ix) or altering or disturbing the heating and ventilation system serving the Premises, including any ducting connected thereto. Resident must notify Landlord and its agents immediately in writing of any damage to or deterioration of the ceiling in the Premises or any portion thereof, including flaking, loose, cracking, hanging or dislodged material, water leaks, or stains in the ceiling, or upon the occurrence of any of the events described above.

27.3. <u>Registered Sex Offenders</u>. Information about specified registered sex offenders is made available to the public via an internet website maintained by the U.S. Department of Justice. Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides. Resident is encouraged to search such websites prior to executing this Lease.

27.4. <u>Credit Reporting Agencies</u>. In addition to favorable payment history, unpaid Rent or unpaid payment for any other amounts due under this Lease are reportable to credit reporting agencies.

27.5. <u>Release of Information</u>. Resident's personal information is subject to the terms of Landlord's privacy policy, as

16



DocuSign Envelope ID: 99CEE92D-F397-4766-806E-671F621ABD43

modified from time to time, and available at https://rentprogress.com/terms-and-privacy/ , and which is incorporated by reference into this Lease.  Without limiting the foregoing and as noted therein, Resident authorizes Landlord and Property Manager to release any information regarding Resident or any Occupant(s) as may be required by law or requested by governmental authorities or agencies, law enforcement agencies, or courts, or to vendors, affiliates and others for marketing and other purposes in accordance with Landlord's privacy policy. Resident further authorizes landlord and Property Manager to release contact information to vendors for purpose of scheduling preventative maintenance and/or service requests.

27.6.    Limitation of Warranties: There are no implied warranties of merchantability, of fitness for a particular purpose, or of any other kind arising out of this Lease, and there are no warranties that extend beyond those expressly stated in this Lease.

27.7.    Careful Review.  This Lease is binding upon final acceptance and execution by the parties. READ ALL OF THE TERMS OF THIS LEASE CAREFULLY. If you do not understand the effect of this Lease, consult with an attorney before signing.

[SIGNATURE PAGE FOLLOWS]

© 2021 Progress Residential                    Residential Lease (2021.v2)



**RESIDENT AGREES TO RENT THE PREMISES FROM LANDLORD ON THE TERMS PROVIDED IN THIS LEASE.**

Resident's Signature:
Resident's Printed Name: **Paul David**

Resident's Signature:
Resident's Printed Name: **Damita David**

Resident's Signature:
Resident's Printed Name: **Kimberly David**

Resident's Signature:
Resident's Printed Name: **Paul David Jr**

Resident's Signature:
Resident's Printed Name: **Tabitha David**

Resident's Signature:
Resident's Printed Name:

Resident's Signature:
Resident's Printed Name:

**Date:** 5/12/2021 | 7:06:41 AM MST

**LANDLORD AGREES TO RENT THE PREMISES TO RESIDENT ON THE TERMS PROVIDED IN THIS LEASE.**

**Progress Residential Borrower 9, LLC**

**By:**         Vicky Espiasse

**Title:** Authorized Signer

© 2021 Progress Residential            Residential Lease (2021.v2)



**Disclosure of Information on Lead-Based Paint and/or Lead-Based Paint Hazards**

**Lead Warning Statement**

*Housing built before 1978 may contain lead-based paint. Lead from paint, paint chips, and dust can pose health hazards if not managed properly. Lead exposure is especially harmful to young children and pregnant women. Before renting pre-1978 housing, Landlords must disclose the presence of known lead-based paint and/or lead-based paint hazards in the dwelling. Residents must also receive a federally approved pamphlet on lead poisoning prevention.*

**Landlord's Disclosure**

(a)   Presence of lead-based paint and/or lead-based paint hazards (check (i) or (ii) below):

(i)   _____Known lead-based paint and/or lead-based paint hazards are present in the housing (explain).
(ii)   __X__ Landlord has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.

(b)   Records and reports available to the Landlord (check (i) or (ii) below):

(i)   _____Landlord has provided the Resident with all available records and reports pertaining to lead-based paint and/or lead-based paint hazards in the housing (list documents below).
(ii)   __X__ Landlord has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

**Resident's Acknowledgment** (initial)

(c)   _____Resident has received copies of all information listed above.

(d)   _____Resident has received the pamphlet *Protect Your Family from Lead in Your Home.*

**Certification of Accuracy**

The following parties have reviewed the information above and certify, to the best of their knowledge, that the information they have provided is true and accurate.

Resident's Signature:   *Paul David*        Resident's Signature:   *Damita David*
Resident's Printed Name: : **Paul David**        Resident's Printed Name: : **Damita David**

Resident's Signature:   *kimberly David*        Resident's Signature:   *Paul David Jr*
Resident's Printed Name: : **Kimberly David**        Resident's Printed Name: : : **Paul David Jr**

Resident's Signature:   *Tabitha David*
Resident's Printed Name: : **Tabitha David**        Resident's Signature:
        Resident's Printed Name: :

Resident's Signature:
Resident's Printed Name: :

Landlord:
**Progress Residential Borrower 9, LLC**



**By:**   *Vicky Espiasse*        Vicky Espiasse

**Title:** Authorized Signer

19

© 2021 Progress Residential                Residential Lease (2021.v2)

**UTILITY AND SERVICES ADDENDUM**

This document will serve as an addendum and supplemental agreement (the "**Utility and Services Addendum**") regarding the attached Lease between Landlord and Resident for the Premises. Capitalized terms used in this Utility and Services Addendum have the meanings given to them in the Lease unless specifically defined in this Utility and Services Addendum.

1. <u>Utility Responsibility</u>. The responsibility of the Resident to maintain Utility accounts in the Resident's name will depend on the location of the Premises and other factors. Please read the following information carefully.
   a. Except for any Premises located in North Carolina, **by the first day of the Lease Term** the Resident must establish accounts in the Resident's name for **<u>electricity</u>** and any utilities that are bundled with electricity by the electricity provider. All other utilities, such as natural gas, trash removal, wastewater/sewage, and stormwater, will remain in the Landlord's name and be billed through the Conserve Utility Billing Program, detailed below.
   b. If the Premises is located in North Carolina, the Resident must open accounts for **<u>all utilities</u>** in the Resident's name **by the first day of the Lease Term**.
   c. If this Lease is an extension or renewal from a previous Progress Residential® lease dated on or before September 20, 2017, you may, but are not required to, place electricity and any utilities that are bundled with electricity in your name.
   d. The Resident shall be solely responsible for opening and managing accounts for any other utilities (except natural gas, water, wastewater/sewage, trash removal and stormwater, as specified above) including but not limited to propane and heating oil, available at the Premises.
   e. If the Premises is located in a deregulated area for gas, Landlord will select the deregulated provider(s). If Resident desires to select an alternative provider, it must notify Landlord and Conservice®, and Conservice® will facilitate such selection with the Resident.
   f. If the Premises shares a meter or any utility service with another Progress Residential unit (i.e., townhomes, 2-4 unit residences), the utility charges will be allocated according to the rentable square foot of each sharing the charges.

2. <u>Payments</u>.
   a. For any Utilities identified in this Addendum to be established in the Resident's name, those Utility payments shall be made directly to the Utility service providers.
   b. Any Utilities kept in the Landlord's name will be billed on a monthly basis through the Conservice® utility billing program. Utility Charges, set-up fee, and services fees will be added by the Landlord to the Resident's ledger, and Resident must pay these charges with monthly Rent.
      i. Set-up fee. Resident will pay a onetime account set-up fee in the amount of $25 on the first bill. This fee is for administration, billing, overhead and similar expenses and charges incurred by Landlord for establishing the new accounts.
      ii. Monthly Utility Charges. Conservice® will provide a monthly electronic invoice to the Resident's email account provided, which will identify the charges due. Conservice® may estimate any bill based on prior bill amounts and/or usage.
      iii. Service Fees. Each monthly bill will include a service fee in addition to the Utility Charges. This monthly service fee is for administration, billing, overhead and similar expenses and charges incurred by Landlord for providing billing services, as follows:

20

© 2021 Progress Residential                     Residential Lease (2021.v2)



1. $0.00 for residents in North Carolina and if no utilities are maintained by the Landlord.
2. $9.99 if all utilities are maintained by the Landlord, or if this Lease is an extension or renewal from a previous Progress Residential® lease dated on or before September 20, 2017.
3. $7.95 for all other Residents maintaining accounts for electricity and any utilities that are bundled with electricity.

3. Utility Defaults
   a. Failure to Establish Accounts. Failure to establish accounts in the Resident's name as detailed in this Addendum will result in a fee of $50.00 (the "Utility Default Fee"). The Utility Default Fee will be charged by the end of the fourth (4th) day of the Lease Term and for each month thereafter in which one or more utility accounts remain in the name of the Landlord for any part of the billing cycle. In addition to paying the Utility Default must reimburse Landlord for all Utility Charges incurred by Landlord during any portion of the Lease Term in which the utilities are not in the Resident's name. The Utility Default Fee and Utility Charges will be deemed Rent under this Lease and Resident's failure to pay the Utility Default Fee and Utility Charges when due will constitute a default under the Lease.
   b. Failure to pay Utility Charges. Utility Charges and service fees will be deemed Rent under this Lease and Resident's failure to pay when due will constitute a default of the Lease. If Resident fails to promptly pay all Utility Charges, Landlord may remove its name from the Utility account(s). Resident must make payment in full to Landlord or Conservice® (as directed on the bill) of the Utility Charges prior to the due date listed on each bill. Landlord and Resident agree that the actual cost to Landlord and/or billing provider when Resident fails to pay the utility bill on time is difficult or impossible to ascertain, but the parties agree that Landlord and Conservice®, in the event of a late payment, incur certain costs, such as processing, enforcement, accounting expenses, and late charges imposed on Landlord.

4. Generally.
   a. "Conservice®" is a utility management and billing company that provides support for the Premises. Resident may contact Conservice as follows: Service@Conservice.com or 866-947-7379.
   b. If any Utilities are not separately metered, Resident must pay Resident's proportional share, as reasonably determined and directed by Landlord.
   c. All Utility-related charges assessed to the Premises may be used to calculate the amount charged to each Resident, including, but not limited to, stormwater charges, utility related charges contained on tax bills (stormwater, flood control, water quality, standby charges, etc.) and all miscellaneous charges contained on the utility bills received from the local utility providers.
   d. Upon receiving your notice of intent to vacate the Premises, the Landlord will apply estimated Utility Charges to Resident's account through the move-out date. Estimated charges will be adjusted after actual charges are received by the Landlord, which may occur after the move-out date. All estimated Utility Charges are due and payable prior to move-out.

5. Authorization to review and share utility account history.  The Resident hereby authorizes Landlord, Manager, and/or their designated representatives to obtain records on demand documenting consumption of energy or natural resources for the Premises, for the entire term of the Lease.  Such data will be kept confidential to the extent required by law and will be used only for purpose of complying with governmental regulations, improving the energy efficiency of the Premises, and other internal purposes as permitted by law.

This Utility and Services Addendum is incorporated into the Lease executed or renewed this day between Landlord and Resident.

21

© 2021 Progress Residential    Residential Lease (2021.v2)

**PET ADDENDUM**

This document will serve as an addendum and supplemental agreement (the "Pet Addendum") regarding the attached Lease between Landlord and Resident for the Premises. Capitalized terms used in the Pet Addendum have the meanings given to them in the Lease unless specifically defined in the Pet Addendum.

Generally, acceptable types of pets include dogs, cats, other non-caged animals, caged birds, caged animals, (such as hamsters and lizards), and fish. Livestock, farm animals (including potbellied pigs), and poisonous, dangerous, or exotic animals (such as snakes and spiders) are prohibited. Any animal may be deemed unacceptable by Landlord if such animal is not considered appropriate for the rental situation. No pet other than those listed here are authorized on the Premises without Landlord or Property Manager's written consent. All pets must be licensed in accordance with applicable law.

Resident may permit the pet(s) described below on the premises, but only according to any applicable HOA rules and regulations, or the terms of the attached Lease and this Pet Addendum:

1.  **Authorized Pets**.  Resident is authorized to keep the following dogs, cats, other non-caged animals:

| Type (cat, dog, etc.) | Name |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

2.  **Pet Fee**. Resident shall pay Landlord a non-refundable Pet Fee, in the amount of $300 per pet.  The Pet Fee shall not apply to verified service or assistance animals.

3.  **Additional Rent**.  Resident shall pay an additional Rent in the amount of $ 35.00 per month, per pet.  This additional Rent shall not apply to verified service or assistance animals.

4.  **Resident Liability**. The Pet Fee does not limit Resident's liability. Resident shall be liable for all injury, harm, or damage caused by any pet to the Premises or any person or property, and agrees to indemnify and hold Landlord harmless from the same. Resident shall be responsible for the costs of, among other things, all cleaning (including professional carpet cleaning when required by Landlord at Landlord's discretion), de-fleaing, and deodorizing of the Premises, as well as all damage to carpet, flooring, doors, walls, shades, blinds, windows, screens, appliances, cabinets or any other part of the Premises, including the landscaping. If items cannot be cleaned or repaired to Landlord's satisfaction, Resident will be responsible for replacing them completely. Payment for all damages, repairs, cleaning, or replacements are due immediately upon demand of Landlord.

5.  **Additional Pet Requirements**.

    A.  Resident must follow the rules of any applicable HOA with regard to pets.

    B.  Resident must clean and properly dispose of all pet waste, both inside and outside of the Premises, on a daily basis. No excrement is to remain on the grounds.

    C.  Pets should not make excessive disturbing noises. Disturbing noises include continued and repeated howling, barking, whining, squawking or other utterances that cause unreasonable annoyance, disturbance, or discomfort to neighbors or others in close proximity to the pet.

© 2021 Progress Residential          Residential Lease (2021.v2)

DocuSign Envelope ID: 99CEE92D-F397-4766-806E-671F621ABD43

D.  If, in the judgment of Landlord, a pet is a nuisance or has caused damage or injury to any person or property, Resident agrees to remove the pet from the Premises permanently upon five (5) days written notice from Landlord or Property Manager.

E.  In some circumstances, an animal control officer may be permitted to enter the Premises and remove a pet, if, in Landlord's discretion, (i) the pet(s) have been abandoned; (ii) the pet(s) have been left in the Premises for an extended period of time without food or water; (iii) Resident has failed to care for a sick pet; or (iv) the pet has become a nuisance or caused damage or injury to any person or property. Any costs associated with the removal of a pet shall be borne by Resident.

6.  **Changes in Pet Policy**. Landlord may change any term of this Addendum after thirty (30) days' notice to Resident; provided, however, if such change means that your pet(s) will no longer be allowed, then your pet(s) will nonetheless be permitted (grandfathered) until the expiration of your then-current Lease Term.

This Pet Addendum is incorporated into the Lease executed or renewed this day between Landlord and Resident.

© 2021 Progress Residential          Residential Lease (2021.v2)



**RENTERS INSURANCE PROGRAM ADDENDUM**

Resident is required to maintain renters liability insurance ("**Renters Insurance**") with a personal liability limit of at least $100,000 through the Lease Term using the professional vendor of Resident's choice. Evidence of your Renters Insurance must be submitted to your Property Manager or to Effective Coverage at www.EffectiveCoverage.com/Proof prior to the Lease Start Date and must include the following information:

1. A copy of your Renters Insurance certificate of coverage or declaration page
2. The names of all Residents on the Lease
3. The Landlord listed as an "Additional Interest" with notices  to Alerts – Progress Residential, PO Box 38015, Albany, NY 12203
4. Policy start and end dates
5. Policy number
6. Personal liability coverage in the minimum of $100,000

Any Resident that does not submit and maintain Renters Insurance in accordance with the above requirements (as may be modified from year to year) shall be required to pay a monthly exemption fee to Landlord as additional Rent and shall be automatically enrolled in Landlord's Renters Insurance Exemption Program ("**Exemption Program**"). Under the Exemption Program, Resident will be charged an additional $14.95 a month as additional Rent and will be exempt from the Renters Insurance requirement. The Renters Insurance Exemption Program is not a damage deposit and does not provide insurance for personal property/belongings, liability for injury or loss or damage to others.

Should you desire to obtain Renters Insurance, you may do so at any time. You simply need to submit a copy of your Renters Insurance policy declarations page or certificate of coverage providing for the above requirements via www.EffectiveCoverage.com/Proof or email or bring a copy of the certificate of coverage to your Property Manager. If you provide acceptable proof of coverage within the first seven (7) days after the Lease Start Date, you will not be charged an Exemption Program fee for the first month. After the first month, the exemption fee will be charged if the proof of coverage is not provided by the fifteenth (15th) day of the preceding month. If your Renters Insurance Policy lapses, expires or is terminated, you will be automatically enrolled in the Exemption Program.

You may also purchase Renters Insurance from Effective Coverage, Landlord's preferred insurance provider.  For a Renters Insurance quote from Effective Coverage, please call their insurance experts at (800) 892-4308 or visit them online at www.EffectiveCoverage.com/Progress. Once purchased, Effective Coverage will automatically notify Landlord and you will no longer be enrolled in the Exemption Program.

This Renters Insurance Program Addendum is incorporated into the Lease executed or renewed this day between Landlord and Resident.

Initials: 

24

DocuSign Envelope ID: 99CEE92D-F397-4766-806F-671F621ABD43

**GUARANTOR'S ADDENDUM (If Applicable)**
**GUARANTEE OF PAYMENT**

In consideration of the execution of the Lease by Landlord and for other valuable consideration, receipt of which is hereby acknowledged, the undersigned (individually and collectively, if more than one, "**Guarantor**") hereby (i) guarantees unconditionally to Landlord and Landlord's agents, successors, and assigns, the full performance of the Lease, including the prompt payment of all rent, any and all court costs and attorney fees incurred in enforcing the Lease, and all other sums that become due pursuant to the Lease; (ii) consents to any changes, modifications, or alterations of any term in the Lease agreed to by Landlord and Resident and acknowledges that such changes, modifications, or alterations bind Guarantor even if Guarantor is not party thereto; (iii) waives any right to be informed or noticed about any default by Resident; (iv) waives any right to require Landlord or Landlord's agents, successors, or assigns to proceed against Resident for any default occurring under the Lease before seeking to enforce this Guarantee of Payment; (v) waives any right to trial by jury in any claim related the Lease or this Guarantee of Payment; and (vi) acknowledges and represents that it has received a direct and substantial benefit from the Lease.

**GUARANTOR (PRINT NAME):** _____
**GUARANTOR (SIGN NAME):**      _____
**ADDRESS:** _____
**CITY:** _____  **STATE:** _____  **ZIP:** _____
**TELEPHONE:** _____  **EMAIL:** _____

**GUARANTOR (PRINT NAME):** _____
**GUARANTOR (SIGN NAME):**      _____
**ADDRESS:** _____
**CITY:** _____  **STATE:** _____  **ZIP:** _____
**TELEPHONE:** _____  **EMAIL:** _____

**IF ONLY ONE PERSON SIGNS THIS GUARANTEE OF PAYMENT, AND THAT PERSON IS A RESIDENT OF ARIZONA, TEXAS, CALIFORNIA, IDAHO, LOUISIANA, NEVADA, NEW MEXICO, WASHINGTON OR WISCONSIN, SUCH PERSON REPRESENTS AND WARRANTS THAT HE OR SHE IS UNMARRIED.**

© 2021 Progress Residential        Residential Lease (2021.v2)

**Repair Services Cost Sheet Addendum**

Repairs or services provided by Landlord, Property Manager or its agents for damage due to the misuse, negligence, action or inaction of Resident, Occupant, their guests or invitees will be charged to Resident (or charged against the Security Deposit). Charges and fees include, but are not limited to, the following:

| | |
|---|---|
| Lock out fee | $75 |
| | |
| Re-inspection due to Resident violation | $35 for 1st re-inspection and $50 each thereafter |
| Replace missing smoke detector | $50 each |
| Replace missing smoke detector battery | $12 each (includes $10 fine) |
| Replace light bulbs | $5 each |
| | |
| Replace, re-string, or re-hang window blinds | $75 each |
| Replace lost key (apartment, dumpster, or laundry room) | $20 each |
| Re-key home (keys not returned at move-out) | $100 per door |
| Emergency Re-key home | $150 per door |
| Garage Remotes | $50 per remote |
| | |
| Clogged toilet | $85 minimum |
| Tub clog | $75 minimum |
| Drain clog | $75 minimum |
| | |
| Broken single pane window | $20/square foot |
| Broken double pane window | $40/square foot |
| Missing or broken screen(s) | $70 |
| | |
| Landscaping clean up service | $150 minimum |
| Sprinkler head repair | $25 each |

26

© 2021 Progress Residential                    Residential Lease (2021.v2)



DocuSign Envelope ID: 99CEE92D-F397-4766-806E-671F621ABD43

| | |
|---|---|
| Debris or trash clean-up (including abandoned possessions, broken furniture, etc.) | Truck fee $50 per cubic yard |
| Full Home Clean | $0.25 /square foot of home |
| Partial Clean | $35 per room minimum |
| Clean oven or refrigerator | $60 each |
| Carpet Cleaning | $0.15/square foot, $120 minimum |
| Carpet Replacement | $17.50 per sq.yd |
| Painting (due to holes in wall or other damage) | $145 per room |
| Noise Violation    $200 per incident | |
| Garbage Violation (trash on porch or premises) | $50 per incident plus applicable HOA Non-Compliance Fee |
| Resident caused Pest Control service | $95 minimum per treatment |
| Labor Costs for all Services, Repairs and Replacements | $75/hour |

The above costs are minimum fees, may be exclusive of labor costs.  A 20% administrative fee will be added to all charges. Charges may be subject to state and local taxes. Charges subject to change without notice should costs increase.

© 2021 Progress Residential                    Residential Lease (2021.v2)



DocuSign Envelope ID: 99CEE92D-F397-4766-806E-671F621ABD43

**Mold and Moisture Addendum**

This document will serve as an addendum and supplemental agreement (the "**Mold Addendum**") regarding the attached Lease between Landlord and Resident for Premises. Capitalized terms used in this Mold Addendum have the meanings given to them in the Lease unless specifically defined in this Mold Addendum. The parties agree that the following provisions modify and supersede those found in the Lease:

1. <u>Resident Covenants and Acknowledgements.</u> Resident acknowledges and agrees that, as a part of the Lease, Resident has a responsibility to maintain the Premises in such a manner to inhibit mold and mildew growth and that Resident's agreement and promise to do so is a material consideration for Landlord's agreement to enter into the Lease and rent the Premises to Resident. As such, Resident promises, covenants and agrees to do the following:

    A. Keep the Premises clean and regularly dust, vacuum and mop, particularly the kitchen, bathroom(s), carpets and floors.

    B. Immediately remove any and all visible moisture accumulation and/or spillage on counter-tops, windows, windowsills, walls, ceilings, floors, and other surfaces as soon as reasonably possible. Periodically clean and dry the walls and floors around sink(s), bathtub(s), shower(s), toilet(s), windows, and patio doors using a common household disinfecting cleaner.  Blot dry spills on carpeting.

    C. Use household cleaners designed to prevent or eradicate any mildew and mold on any hard, non-porous surfaces.

    D. Do not block, impede or cover any heating, ventilation, or air conditioning ducts.

    E. Utilize the air-conditioning to maintain humidity levels that are not conductive for the growth of mold or mildew.

    F. Utilize heating systems in moderation, and so as to not increase potential for mold and/or mildew growth.

    G. Keep Premises properly ventilated by periodically opening windows to allow circulation of fresh air during dry, but only during non-humid weather days only.

    H. Keep windows and doors closed in damp, humid, or rainy weather.

    I. Open blinds or curtains to allow light into Premises.

    J. Do not overfill closets or storage areas in such a way to restrict airflow.

    K. Keep closet doors ajar.

    L. Avoid excessive use of indoor plants, and only water indoor plants outdoors.  Do not over water indoor plants.

    M. Use the bathroom fan when bathing or showering and allow the exhaust fan to run for at least twenty (20) minutes after bathing or showering is completed with the door closed, or until all excess moisture has been vented from the bathroom. Keep the shower curtain inside the tub or shower or fully close the shower doors when showering or bathing. After taking a shower or bath: (i) wipe moisture off of bathtub/shower fixtures, walls, doors, floors; and (ii) hang towels and bath mats so they will completely dry out.

    N. Use ceiling fans if present.

    O. Use the exhaust fan in the kitchen when cooking or while running the dishwasher and allow the fan to run until all excess moisture has been vented from the kitchen.

    P. Clean the lint filter in the clothes dryer after each use and promptly report any damage to the vent connection.  If condensation forms in the area, wipe it dry.  Dry damp clothing as soon as possible.

    Q. Remove garbage regularly.

    R. Immediately throw away or remove any moldy or rotting food.

    S. Regularly look for leaks in washing machine and refrigerator hoses, faucets, and discharge lines, especially if the leak is large enough to infiltrate into nearby walls.

    T. Avoid air drying dishes.

    U. Do not hang-dry wet clothes indoors.

    V. Permit Landlord, with appropriate notice, to enter the Premises to make inspections and, if necessary, repairs to the Premises regarding water intrusion, excess moisture, and mold or mildew growth.

28



2. <u>Small Areas of Suspected Mold.</u> If intermittent suspected mold or mildew is observed in a limited and small area (less than one (1) square foot in size) on a hard, non-porous surface, as such ceramic title, Formica, vinyl flooring, plastic or metal and the mold or mildew does not appear to be the result of an ongoing leak or excess moisture problem, Resident may utilize his or her own discretion or judgment to remove the mold or mildew with the use of household cleaners designed to remove and eradicate mold or mildew within twenty-four (24) hours of it first appearing. However, in the event that Resident does not wish to do so, is unsure of whether or not the signs of suspected mold or mildew are common or are a sign of a potential issue, or in the event the mold or mildew reoccurs following an attempt to remove and eradicate same, Resident agrees that it will immediately report the condition to the Landlord, in writing, within twenty-four (24) hours of the condition first appearing.

3. <u>Written Reports.</u>  Resident agrees that the Resident will immediately notify the Landlord, **<u>in writing</u>**, within **<u>twenty-four (24) hours</u>** of Resident's suspicion or observation of any the following conditions:

   A.  Visible or suspected leaks, water damage, water intrusion, excess moisture.
   B.  Visible or suspected mold or mildew growth, unless Resident fully complies with Section 2 above.
   C.  Windows or doors that do not open or close properly.
   D.  Musty or moldy odors.
   E.  Shower, bathroom, sink, or toilet overflows.
   F.  Leaky faucets, plumbing, pet urine accidents.
   G.  Discoloration of walls, baseboards, doors, window frames, or ceilings.
   H.  Moldy clothing.
   I.  Refrigeration or air condition drip pan overflows.
   J.  Any malfunctioning in the heating, ventilation, or air conditioning system.
   K.  Moisture dripping from or around any vents, air condition condenser lines.
   L.  Loose, missing or failing grout or caulk around bathtubs, showers, sinks, faucets, countertops, or clothes dryer vent leaks.
   M.  Overflows from bathroom, kitchen or laundry facilities.
   N.  Any and all excess moisture accumulation.
   O.  Health issues that Resident believes may be related to the air quality within the Premises.

4. <u>Violation of Mold Addendum.</u> Resident's failure to comply with the terms and conditions set forth in this Mold Addendum shall constitute a material breach of the Lease, and Landlord shall be entitled to exercise all of Landlord's rights and remedies available at law or in equity. A material breach of this Mold Addendum includes, but is not limited to, Resident's failure to notify the Landlord, in writing, of the conditions set forth in Paragraph 2 above, immediately upon Resident's initial suspicion or observation of same. In the event Landlord determines, in Landlord's sole and absolute discretion, that the Resident is not maintaining the Premises in a manner consistent with this Addendum, the Lease or the Best Practices Guidance, the Landlord may, at Landlord's sole an absolute discretion, terminate the Lease and seek any and all remedies available to the Landlord under the Lease and this Addendum. If Resident fails to comply with this Mold Addendum, Resident can be held responsible for property damage to the Premises and any health problems that may result.

5. <u>Release, Indemnification, and Hold Harmless.</u> Resident agrees to release, indemnify, discharge, hold harmless and forever discharge the Landlord, and the Landlord's affiliates, agents, employees, successors and assigns, for any and all liabilities, losses, claims, causes of action, damages or injuries to person or property of any kind resulting directly or indirectly from Resident's failure to comply with the terms and conditions of the Lease and/or this Mold Addendum.

This Mold Addendum is incorporated into the Lease executed or renewed this day between Landlord and Resident.

© 2021 Progress Residential            Residential Lease (2021.v2)



DocuSign Envelope ID: 99CEE92D-F397-4766-806E-671F621ABD43

**CONCESSION ADDENDUM**

This is an addendum and supplemental agreement (the "Addendum") regarding the Residential Lease Agreement ("Lease") incorporated herein executed between the undersigned Resident and Landlord.  Capitalized terms have the meanings given to them in the Lease unless specifically defined in this Addendum.

By signing this Addendum, Resident acknowledges the receipt of a concession in the amount of $  in connection with signing the Lease and/or one or more promotions offered by the Landlord with respect to the Lease (the "Concession").

| Start Date | End Date | Concession Amount |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

The Concession identified above will be applied as a credit to the charges on the Resident's account.  Credits will be applied as described in Landlord's promotion, which may include credits be considered as Rent under the Lease.

Any Concession must be repaid in the event of a default of the Lease, an early termination of the Lease, or as otherwise identified in Landlord's promotion, which may include a reverse of the credit previously applied to the Resident's account.

This Addendum is attached to the Lease and incorporated therein.  Other than as expressly amended herein, all other terms and conditions of the Lease shall remain in full force and effect.

30

## STATE SPECIFIC ADDENDUM – GEORGIA

This document will serve as an addendum and supplemental agreement (the "Georgia Addendum") regarding the attached Lease between Landlord and Resident for Premises located in the State of Georgia. Capitalized terms used in this Georgia Addendum have the meanings given to them in the Lease unless specifically defined in this Georgia Addendum.  The parties agree that the following provisions modify and supersede those found in the Lease:

1. <u>Disclosure of Ownership</u>. At or before the commencement of the Lease, Landlord is required provide to Resident in writing the names and addresses of (i) the owner of the Premises or a person authorized to act on behalf of the owner to receive notice, and (ii) the person authorized to manage the Premises. In the event that there is a change in any of these names and addresses, Landlord shall advise Resident of the change within 30 days after the change, either in writing or by posting notice in a clear place. This notice is provided on the front page of this lease

2. <u>Escrow Disclosure</u>**.**  Security deposits are deposited in an escrow account with BankUnited, N.A..

3. <u>Notice of Propensity of Flooding</u>. To Landlord's knowledge, neither the Premises nor any portion thereof has flooded in any material respect at least three times within the last five (5) years immediately preceding the execution of this Lease. Flooding is defined as the inundation of a portion of the living space caused by an increased water level in an established water source such as a river, stream, or drainage ditch, or as a ponding of water at or near the point where heavy or excessive rain fell.

4. <u>Move-In Inspection</u>. Prior to Resident tendering a Security Deposit, Landlord will provide Resident with a document itemizing any existing damages to Premises. Prior to taking occupancy, Resident will be given the right to inspect the Premises to ascertain the accuracy of the document. Both Landlord and Resident shall sign the document. Resident shall be entitled to retain a copy of the document. Resident acknowledges that Resident has carefully inspected the Property in which the Premises are located and is familiar with same.

5. <u>Move-Out Statement</u>: Within three (3) business days after the date of termination of occupancy, Landlord will provide Resident with a statement ("Move-Out Statement") listing the damage done to Premises which is the reason for the retention of the Security Deposit and the estimated dollar value of such damage. If Resident terminates occupancy without notifying Landlord, Landlord may make a final inspection within a reasonable time after discovering the termination of occupancy. Resident shall have the right to inspect Premises within five (5) business days after the termination of occupancy in order to ascertain the accuracy of the Move-Out Statement. If Resident agrees with the Move-Out Statement, Resident shall sign the same. If Resident refuses to sign the Move-Out Statement, Resident shall specify in writing the items on the Move-Out Statement with which Resident disagrees within three (3) business days. For all purposes herein, a business day shall not include Saturday, Sunday, or federal holidays.

6. <u>Attorneys Fees, Court Costs and Costs of Collection</u>: Whenever monies due hereunder are collected by law or by attorney at law to prosecute such an action, then both parties agree that the prevailing party will be entitled to actual attorney's fees, plus all court costs and costs of collection.

This State-Specific Addendum is incorporated into the Lease executed or renewed this day between Landlord and Resident.

© 2021 Progress Residential                    Residential Lease (2021.v2)